Estate of Lester Hofheimer, Corinne Hofheimer, et al., Executors, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 108330. Promulgated September 29, 1943.

*Wilbur H. Friedman, Esq.*, for the petitioners.
*Henry C. Clark, Esq.*, for the respondent.

774

OPINION.

KERN, *Judge:* (1.) The first question is whether the value (as of one year after decedent's death) of the interest contributed by the decedent to a trust fund of which he and his brother, Arthur, were the settlors and their cousin the beneficiary for life, with remainders over of the principal to their respective children and their issue, was properly includible in the decedent's gross estate. This gift on trust was made on October 5, 1922, and respondent seeks to include decedent's interest

(one-half the corpus) on the ground of the power reserved by the settlors or the survivor "of terminating this trust or from time to time amending its terms in respect to the payment of income to the beneficiary and of imposing any terms and conditions whatsoever in respect to the amount of income thereafter to be paid' or the circumstances under which any income shall be payable"; and to bring the trust on this account within the provisions of section 302 (d) (1) and (2), Revenue Act of 1926, as amended by section 401, Revenue Act of 1934, and by section 805, Revenue Act of 1936. Arthur Hofheimer died in 1927, leaving decedent with the full power set out above. The decedent died on November 30, 1936. The agreed valuation date is that of one year from decedent's death under section 302 (j), as amended.

Since the transfer here in question was made in 1922, the amendments made by section 805. Revenue Act of 1936. are inapplicable, by reason of subsection (b) of that amending provision. Therefore, the controlling statute is section 302 (d) (1) and (2) of the Revenue Act of 1926. as amended by section 401 of the Revenue Act of 1934.[1]

It will be seen that the critical words here are "subject * * * to * * * a power * * * to alter, amend, or revoke"; and that the 1934 amendment in this respect added nothing to the provision in the basic act of 1926. The Revenue Act of 1936 added the words to this clause "or terminate."

When we turn to the trust indenture, we find that the fourth article, the pertinent paragraph of which is set out in full in our findings and quoted in part above, leaves no doubt that the survivor. of the two settlors, who here proved to be the decedent, had reserved a complete power during his life "of terminating this trust or from time to time *amending its terms in respect to the payment of income to the beneficiary* and of imposing any terms and conditions whatsoever

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

SEC. 401. REVOCABLE TRUSTS.

Section 302 (d) of the Revenue Act of 1926 is amended to read as follows:

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer. by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter. amend, or revoke. or where the decedent relinquished any such power in contemplation of his death. except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

"(2) For the purposes of this subdivision the power to alter. amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death."

*in respect to the amount of income thereafter to be paid* or the circumstances under which any income shall be payable; *and upon the termination of the trust as aforesaid, the principal of said fund shall be distributed as hereinbefore provided.*" (Italics ours.) The children of the two settlors were the remaindermen to whom the principal would be distributed on the death of the life tenant, Clara Hofheimer.

We think it clear that the life estate only is includable in decedent's gross estate, since no power was reserved to alter the remaindermen. As to the inclusion of the life estate, we can find no satisfactory ground to distinguish the instant case from *Commissioner* v. *Bridgeport Trust Co.*, 124 Fed. (2d) 48 (C. C. A., 2d Cir.) ; certiorari denied, 316 U. S. 672, where the settlor reserved the right only to "reallocate the disposition of the income of this said trust fund." He had left the income to his children for life, then to his grandchildren for life, the remainder to be distributed among the heirs of his body surviving his grandchildren. The Circuit Court held the power to reallocate the life estates tantamount to a power "to alter, amend or revoke" and included them in the gross estate. We think that the life estate here should be included in decedent's gross estate. The principle is too well established to admit of discussion. *Porter* v. *Commissioner*, 288 U. S. 436; *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85.

It is surprising that petitioners' counsel should now raise any question on constitutionality because the trust was created in 1922, before the first provision similar to that here applicable was enacted by the Revenue Act of 1924. The leading case on the subject deals with trusts created respectively in 1903 and 1910, in which the decedent, who died in 1922 and whose estate consequently fell under the Revenue Act of 1921, had reserved the power to himself alone to revoke; and the Supreme Court held these trusts includable in the gross estate. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. The basic principle emphasized by the Court is that where the transfer remains uncompleted until death, the statute is not retroactive; and that section 402 (c) of the 1921 Act, which included in the gross estate a trust "intended to take effect in possession or enjoyment at or after his death," was broad enough to include a revocable trust. Certainly the power of recall of the life estate in the instant case ceased only with decedent's death and is enough to justify the life estate's inclusion, regardless of the date of its creation, and we so hold. Since only one-half of the corpus was contributed by decedent, however, only that proportion of the life estate is now includable in decedent's gross estate.

(2) We now pass to the second trust, created by decedent in 1923, and the two amendments of it, in 1928 and 1936. A brief discussion of the legal effect for purposes of taxation of each state of the trust will make easier consideration of the respondent's argument that the corpus

is now includable in the gross estate. All the beneficiaries of the several trusts survived the decedent.

In 1923 decedent gave certain shares on trust to his wife's parents. the Kodziens, for life (or the survivior), with remainder over to his daughter, Marion; but if she should die with issue, a contingent remainder to her issue; and if without issue, to decedent's other children. The trust was to continue for the period of the life estate, the income to be paid to the life tenant, and on the survivior's death, the trust to cease and the principal to be distributed to decedent's daughter.

It is obvious that the separate interests so given are not includable in decedent's gross estate. Decedent reserved, however, a power of revocation "in whole or in part." to be exercised jointly with his wife, of the whole trust settlement. This power brings the whole corpus of the trust as it then stood within section 302 (d), Revenue Act of 1926. *Helvering* v. *City Bank Farmers Trust Co., supra.*

In 1928 the decedent and his wife amended the trust under the reserved power, making several material alterations. After amendment, an estate for the life of the decedent, or for the life of the surviving Kodziesen, whichever should be the shorter, was left to the Kodziesens. Although not strictly so, we may now say that the gift was of an estate *pur autre vie*, with remainder over to the daughter, Marion, and contingent remainders as before. No estate to take effect in possession or enjoyment at decedent's death passed here for the limitation of the life estates to his own life, and the distribution of the remainder on the same occasion did not result in anything passing from decedent on death. His gift was already complete when made and *nothing thereafter moved from him to the living*, his death being merely the event which caused the estate *pur autre vie* to terminate and the remainder man to come into possession. This is obvious, for under the Supreme Court's construction of the word "enjoyment," and until this view was altered by the Joint Resolution of Congress of March 3, 1931, which is not to be applied retroactively, *Hassett* v. *Welch*, 302 U. S. 674. an estate for life given by the settlor-decedent even to himself, with vested remainders over, would not have rendered the corpus taxable, *May* v. *Heiner*, 281 U. S. 238.

There was in this amendment, however. as in the original trust instrument, a power of revocation reserved jointly to decedent and his wife. but this power was limited to the estate *pur autre vie*. for "in the event of revocation * * * the principal of the said trust fund and any accumulated income thereon shall immediately * * * be delivered to * * * Marion Ruth Hofheimer, if she be then alive * * * "; with contingent remainders over as before. Clearly, then, the most which could be included in decedent's gross estate under this power would be the value of the Kodziesens' estate, since that was all

that was subject to it; and this interest would not survive decedent's death.

We pass to the second amendment of July 27, 1936, which was in effect at the time of decedent's death four months later. Here, again, material changes were made. The Kodziesens were left a life estate or until the remainderman, decedent's daughter Marion, should become of age on October 18, 1939, whichever should determine sooner; with a remainder and contingent remainders as before. Nothing passed from decedent on death under these terms.

Here, again, a power of revocation was reserved, but this time it was given *to the wife alone.* It was much broader than in the second instrument, for it allowed that alteration might be made, provided that it "be made only in favor of issue of the marriage of Corinne and Lester Hofheimer"; and the power of modification "shall include the * * * power to terminate the trust in all or in part and vest the principal * * * absolutely in any of said issue." Such a power, although special and limited to a class, has been held to render the corpus taxable if the power is held at death by the decedent, *Cook* v. *Commissioner,* 66 Fed. (2d) 995 (C. C. A. 3rd), certiorari denied, 291 U. S. 660; *Commissioner* v. *Chase National Bank,* 82 Fed. (2d) 157 (C. C. A., 2d Cir.) ; both relying on *Porter* v. *Commissioner,* 288 U. S. 436. But here it was not held by the decedent, or the decedent and another, but by his wife alone.

It is obvious, therefore, that, if any part of the trust corpus is to be included in decedent's gross estate, other considerations than the ordinary ones of an estate passing at death, or of the expiration at death of powers reserved to the decedent, must bring it in.

Respondent attacks this trust, first, on the ground that, by reason of the self-imposed limitations on the powers of revocation of decedent and his spouse set out in the amendment of 1928, the trust of 1936 could not lawfully have been set up, was invalid, and leaves the 1928 trust in full force and effect at the date of decedent's death. Or so at least we understand the argument. It is not without cogency, for the inducement clauses of the amendment of 1928, which we have quoted in our findings, and the gift itself of the remainder to decedent's daughter, Marion, on the settlor's death, or her maternal grandparents' death, whichever should be sooner, with the express limitation in the power of revocation clause "that in the event of revocation, the assets, interests and properties constituting the principal of the said trust fund and any accumulated income thereon shall immediately and without further action. be delivered to and become the absolute property of Marion Ruth Hofheimer, if she be then alive," would indicate as plainly as language can convey the idea that Marion's remainder was vested beyond recall. The 1936 amendment, so far from con-

firming this state of affairs, however, is contradictory in intention; for, after it had definitely fixed the remainder to vest in possession no later than October 18, 1939 (Marion's 21st birthday), regardless of how long the remainderman's grandparents should live, it then conferred on decedent's wife. the remainderman's mother, a complete power to divest Marion of the remainder and to give it to any other of Lester and Corinne Hofheimer's issue. It is barely possible that the power "to terminate the trust in all or in part and vest the principal * * * absolutely in any of said issue" was limited to the contingent remainders and was not intended to apply to the remainder vested in Marion; but the language is broad enough to allow the more comprehensive meaning.

We are not a court of chancery, however, called upon to construe the precise meaning of this power; and, since the asserted power was not in decedent but his spouse, we need not do so for tax purposes. In fact, it may be reasonably doubted whether any issue in the present case can be thus raised collaterally on the lack of power of decedent and his wife to execute the amendment of 1936 in the terms adopted. The remainderman is not before us complaining of the change. But, even if we allow. *arguendo*, that the amendment of 1936 was void and the 1928 instrument the only valid one for our construction. the estate *pur autre vie* of Kodziesen and his wife is. as we have said, all that could be included in decedent's gross estate, so that respondent's other contentions had best be examined. Before leaving this issue. however, we should add that we are unable to follow respondent's argument that the power to revoke. having been joint in the original trust instrument of 1923 and likewise joint in the amendment of 1928, it must necessarily be joint also in that of 1936. It must have been *exercised* jointly while either of the first two instruments was in force, but the power to revoke retained under these two instruments, we conceive, kept a full reservoir of power (except as to dispositions made irrevocable by express limitation) which could be exercised by revocation and redeposited in either decedent or his wife or a stranger, as decedent and his wife jointly might determine. In *Estate of Edward Lathrop Ballard*. 47 B. T. A. 784; 138 Fed. (2d) 512 (C. C. A., 2d Cir.), we considered as not taxable a trust in which the husband-decedent by amendment relinquished to his wife the sole power to revoke but still held a reversion of such power on her death. The instant case is obviously much more favorable to the taxpayer.

We pass, then, to respondent's contention that the relinquishment by decedent in the amendment of 1936 of his power to alter the settlement of 1928 was made in contemplation of death. He relies on subsection (3) of section 401. Revenue Act of 1934, amending the basic Act of 1926 (section 302), which provides that the relinquishment of any power of

revocation (a) made by decedent within two years of his death, (b) without consideration in money or money's worth, and (c) affecting interests "of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess," shall be deemed made in contemplation of death under a rebuttable presumption.

The relinquishment here was made within a few months of decedent's death, was without consideration in money's worth, and was undoubtedly in excess of $5,000 as applied to the corpus which went to Marion Hofheimer. Her interest under the trust at the moment before the amendment of 1936 was the remainder after the death of her grandparents or her father, whichever life estate should terminate sooner. Since Marion was then only 18 years old, her grandfather and grandmother 83 and 73, respectively, and her father 56, her interest in the estate would have been, as respondent computes on applying to its stipulated value of $143,000 on the optional date, the factor of .75157 (Estate Tax. Regulations 80. p. 34, table A), more than $107,000. This value must be taken to be the same as that on decedent's death. Sec. 202 (j), Revenue Act of 1935. The questions remain, what was relinquished? And was the relinquishment in contemplation of death?

Respondent's argument proceeds on the assumption that Marion's interest was relinquished by decedent in 1936 when he executed the new amendment. But it is difficult to see how respondent can include the remainder interest in decedent's gross estate under the relinquishment provision, since the decedent had already relinquished any control over it by the amendment of 1928. It is true that decedent's wife by the 1936 amendment claimed the power to terminate the trust and to vest the principal in *any* of her and the decedent's issue; but, regardless of whether this fact renders the whole amendment open to collateral attack in the present proceeding, it can not confer on decedent more than he actually had in 1928 and until the moment of his relinquishment in 1936. He could not relinquish what he did not have. And it is beside the point to argue that he must have relinquished more than he retained after 1928, because his wife asserted in 1936 a plenary power to revoke and revest in other children than Marion.

On the other hand, it seems clear that decedent did have a power in 1936 to revoke the estate *pur autre vie* and that by the amendment executed in that year he parted with that power permanently. It is immaterial, as we have already said, that his power was exercisable only jointly by himself and his wife. Moreover, the estate *pur autre vie* held by decedent's parents-in-law would fall within the $5,000 clause of the statute. Its value at the moment after the 1936 amendment would be the normal expectancy of Jane Kodziesen, then aged 73, since presumably she would survive her husband, then 83, and would die before the decedent, who was then only 56. This can be easily

computed by the proper tables. The estate now held by the Kodziesens was includible, therefore, if the relinquishment was made in contemplation of death.

On this point the evidence is meager. In fact. the only evidence is that decedent was then in good bodily health and that he said something to his wife about the change enabling her. as she testified. to make any future decisions that "I might care to make as to my parents' welfare." In an affidavit filed with the Commissioner, however, she stated that "the decedent renounced the power in July 1936, principally because of his concern that possible changes in income tax laws or regulations or in court decisions might make the income of the trust taxable to him." On the witness stand. she said that she made this statement in the affidavit "because my husband and I agreed on the policy we wished to pursue." Nothing more was forthcoming until she admitted that her husband told her nothing about income taxes but that the affidavit statement was written by her attorneys. The witness. Corinne Hofheimer, by this evidence, not only contradicts her statement that her parents' welfare was the concern of herself and her husband, the trustees, in the amendment of the trust. but casts doubt on her credibility as a witness. There is another fact of internal evidence in the instrument itself which enlarges the doubt. Under the 1928 settlement the Kodziesens held for decedent's life, or until the surviving Kodziesen's death if, as might reasonably be expected. the decedent should outlive them both; and only then did the remainder vest in possession in the daughter, Marion. But by the 1936 settlement Marion's remainder vested in possession on October 18, 1939, or less than 39 months after the amendment. was executed. Is it reasonable to suppose that the change would have been made mainly to benefit persons whose estate was so materially cut down? We find it hard to say so.

The statute imposes a presumption of contemplation of death which must be met by satisfactory evidence that the relinquishment was made for some reason connected with life. Although this issue is raised by respondent by amended answer, the statutory presumption still applies, since the facts before us show the 1936 amendment to have been made within six months before decedent's death. As the Second Circuit said in *Farmers Loan & Trust Co.* v. *Bowers*, 98 Fed. (2d) 794; certiorari denied, 306 U. S. 698, at p. 799:

\* \* \* This provision [section 402 (c), Revenue Act of 1918, to all intents similar to the applicable section here] was intended to and does place upon the taxpayer the burden of proving by a fair preponderance of evidence that the transfer within two years of death is not made in contemplation of death.

And it was there said that, if the evasion of the estate tax "played a substantial part in causing Astor to make the transfers," then they

were made in contemplation of death. The other motives argued by the taxpayer were avoidance of income taxes and of a capital levy. The court held that the taxpayer had not sustained his burden of proof.

We are of the opinion that the same is true here, for the only motive which petitioners argue was decedent's is wholly insufficient to overcome the presumption. *Helvering* v. *City Bank Farmers Trust Co., supra,* was decided by the Supreme Court on November 11, 1935, and held that a power of revocation held jointly by decedent and another was still within the compass of the 1926 Revenue Act; and on this point reversed the Board and the Second Circuit. It seems more than probable that decedent was thereafter advised by counsel that he should surrender his power of revocation entirely and that the 1936 amendment was the result of taking this advice. No more likely reason has been suggested by the petitioners. We consequently hold that the power in the decedent to alter or revoke interests of the tenants *pur autre vie* under the trust was relinquished by decedent in contemplation of death. We do not regard Treasury Regulations 108, section 81.17, on which petitioners rely and which exempt certain transfers, as binding on us here.

Since only the interest of any one beneficiary above $5,000 is includable, the question arises whether the two Kodziesens are separate beneficiaries, each entitled to a deduction of $5,000. We think not. Since their interest was joint, not several, and continued to the survivor, it was a single interest and all is to be included above $5,000.

The respondent, however, does not rest here. He advances another and more comprehensive argument embracing the corpora of both trusts. He contends that both the trust for Clara Hofheimer and the Hofheimer children and the Kodziesen-Marion Hofheimer trust were intended to take effect in possession or enjoyment at or after decedent's death in respect of the corpora; and to support this assertion relies on *Helvering* v. *Hallock,* 309 U. S. 106.

If we turn to trust No. 1, we find that the remainder is to go to the settlor's "children, or the issue of any deceased child or children of Lester Hofheimer as may be then living *per stirpes.*" The power of revocation went only to the life estate. In trust No. 2, as amended in 1936, the remainder was to go to Marion Hofheimer, "if she be then living, or, if she be then dead, leaving issue then living, to pay over the principal of the said fund so held in trust to her then living issue, in equal shares *per stirpes*, or, if the said Marion Ruth Hofheimer shall have left no issue then living, then to pay over the principal of the said fund so held in trust to the then living issue of the marriage of Corinne and Lester Hofheimer in equal shares *per stirpes.*"

At the time trust No. 1 was created in 1922, decedent had three young children. In 1936 when trust No. 2 was last amended he had

the same number of children, the youngest, who was the remainderman in the latter trust, being then nearly 18 years of age, and there was also a grandchild. There was little likelihood in fact, therefore, of there being no remainderman to take when the life estate should terminate. Not until all three children had died without issue would the decedent's reversion come into possession.

Much the same situation was true in the second trust, but the probability of the decedent's reversion ever vesting in him in possession was even more remote. His youngest child, Marion, was made remainderman, with a contingent remainder to her issue should she predecease the settlor and leave issue her surviving. If she died without issue, then the remainder passed to her brother and sister or their issue. But the estates of Marion's grandparents were to determine on October 18, 1939, when she should reach the age of 21, a date, at the time the last amendment of trust No. 2 was made, little more than three years distant. The remainderman's brother and sister were then living and her sister had in fact a daughter born the same year.

In the *Hallock* case, as was stated by the Court of the three cases adjudged under the title of that cause, "*All involve* dispositions of property by way of trust in which the settlement provides for *return or reversion of the corpus to the donor* upon a contingency terminable at his death." (Italics ours.) In the first, the *Hallock* case, the gift was to the decedent's wife for life, with remainder to the settlor-decedent if he should be then living, with a contingent remainder over. In the second, the *Bryant* case, the same sort of settlement was made; and in the last, *Rothensies* v. *Huston*, an antenuptial settlement was created in favor of the prospective wife, with remainder over to the settlor in the event that she should not survive him.

It is unnecessary to do more than to state these facts to show that they do not in any instance correspond to those of the trusts of the instant case. There, in all three trusts, only one life, and that of a person presumably a contemporary of the settlor, was interposed between his enjoyment of the contingent reversion. Here in neither trust did decedent name himself as a remainderman in the event of death of any beneficiary. On the contrary, if any child should die, that child's share was to go to its issue, and if it should die without issue, then to the surviving children or their issue. Only ultimately on the failure of all issue before the surviving life tenant's (the Kodziesens) death would the decedent's next of kin take. Since the decedent had three children at the time the earlier trust was created, and an additional grandchild at the time of the second transfer on trust, the probability of his contingent reversion ever vesting in him in possession was very remote, indeed. It is to the degree of this

probability that we are taught to look by the doctrine of *Hallock's* case, and not to the technical nature of the estate which the decedent retained.

Respondent relies especially on two of our decisions, *Estate of John E. Cain, Sr.*, 43 B. T. A. 1133, and *Estate of Horatio Gates Lloyd*, 47 B. T. A. 349; 141 Fed. (2d) 758. In the earlier of these cases the decedent had taken out life insurance policies, naming children as beneficiaries should fail before his, the insured's death, the proceeds beneficiaries. and their spouses and issue; but providing that if all should be paid to his estate. We thought that the case was ruled by the *Hallock* case, since "Every interest under the policy was given upon a contingency terminable only at decedent's death." (P. 1139.) In the instant case not the death of any beneficiary or beneficiaries in being, but the complete failure of decedent's whole line would alone work a reversion in him under the terms of either trust. In neither trust is the vesting of the remainder in possession, by final determination of the individual or class which should take, made with reference to decedent's death.

In *Estate of Horatio Gates Lloyd*, *supra*, the facts, with one important difference, are very similar to those here. The decedent made two gifts on trust to his sons by which they received a life estate with power of appointment by will, the remainder to be distributed on nonexercise of the power to the sons' wives, or issue, or both. If a son died before decedent, leaving no wife or children or appointees under the power. then the corpus of that trust was to revert to the decedent or his next of kin. We held the trusts taxable and distinguished *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54. decided by the Circuit Court of Appeals for the Third Circuit, to which the *Lloyd* case would go on appeal, saying:

* * * In the present case, however, the grantor did provide that under certain circumstances, the property should come back to him during his lifetime. On that basis, the *Kellogg* case is distinguishable, and some part of the value of the trust property must be included in decedent's gross estate.

In the *Kellogg* case, the Circuit Court, in circumstances exactly parallel to those here present, held the trust corpus not includable, saying:

* * * Upon the estates set up by the indenture of the case at bar, if the grantor had survived his wife, his children, their respective spouses, and their issue, and his own next of kin, the corpus of the trust would have reverted to him likewise by reason of the failure of the trust. In either event the trust would have returned to him not by specific words contained in the indenture, but by failure of the trust. Putting to one side any dialectic question as to how a man can outlive his next of kin, it is obvious in the case at bar that tne grantor has no greater chance of recovering the corpus because the estates following the life estates are not vested than if they were. No *inter vivos* trust can ever be made that would not be includible in the grantor's estate for the purpose of taxation if the petitioner's view prevails. In the case at bar the grantor did

not provide any string or tie in the instrument whereby he could pull the *res* back to him or invade the corpus. * * * We think that the fact of importance in the case at bar is that the grantor during his lifetime disposed of his interests in the corpus of the trust as well as any man could. * * *

We are of the opinion that the instant case must be ruled by the *Kellogg* case. See *Estate of Edward Lathrop Ballard, supra,* p. 791.

Nor are we impressed by respondent's argument that there was a relation between the gift to Marion in trust No. 2 and the sums which decedent proposed to leave to her and to his other children by will. We can not agree that this affects trust No. 2 with an intention to make it "take effect in possession or enjoyment at or after decedent's death." It is natural for a father to try to equalize among his children by his final testamentary dispositions all gifts made during his life. and to refer back in his will to such prior gifts. One reason for doing so is to sustain the will against the *caveat* of a dissatisfied child. But this common practice can not affect gifts made *inter vivos* and not in contemplation of death with the purpose of a testamentary disposition.

More serious would be the possibility not raised by respondent that the power to revoke conferred in trust No. 2 on decedent's wife was in the nature of a "string" intended through the conjugal relation to bring the whole corpus within the class of testamentary gifts; but in the present state of the statute law and of the decisions of the Supreme Court we can not say that the power of one spouse may be imputed to the other.

We hold, therefore, that the corpus of neither trust is includable in decedent's gross estate by reason of any principle derived from the *Hallock* case, but that the value of the life interest in trust No. 1 and the value of the Kodziesens' life interest (above the statutory exemption) in trust No. 2 are includable, as already held, in decedent's gross estate.

*Decision will be entered under Rule 50.*

