Estate of Ellen Portia Conger Goodyear, Anson C. Goodyear, Charles W. Goodyear, Bradley Goodyear and Arnold B. Watson, Executors, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket No. 171. Promulgated October 15. 1943.

Thomas R. Wheeler, Esq., and John L. Kenefick, Esq., for the petitioners.

Harold D. Thomas, Esq., for the respondent.

### OPINION.

Arundell. *Judge:* The Commissioner determined an estate tax deficiency in the amount of $431,676.03. The principal issue is whether respondent erred in determining that the remainder interests in four trusts created by decedent in her lifetime were intended to take effect in possession or enjoyment at or after her death within the meaning of section 811 (c) of the Internal Revenue Code. Also in issue is

the correct amount to be included in gross estate if the Commissioner prevails on the first question. The facts are not in dispute.

Petitioners are the executors of the will of Ellen Portia Conger Goodyear, who died a resident of Buffalo, New York, on September 29, 1940, at the age of 87 years.

Decedent created four trusts in the State of New York on December 20, 1934, one for the benefit of each of her four children.

The income from the first trust was to be paid to decedent's son, A. Conger Goodyear, during his lifetime; upon his death the corpus was to be divided into three parts and the income from one part was to be paid to each of the three named children of A. Conger Goodyear, George, Mary, and Stephen, during their respective lifetimes; and upon the death of any such beneficiary the share held for him or her was to be paid to his or her lawful issue per stirpes, if any, otherwise to the others of the three children or their issue per stirpes. If George, Mary, or Stephen should predecease his father, A. Conger Goodyear, then upon the latter's death the share that would have been held for the deceased beneficiary was to be delivered to the lawful issue of such deceased beneficiary, if any, otherwise to the surviors of George, Mary, and Stephen or their issue per stirpes.

A. Conger Goodyear was born in 1877 and survived decedent. His three children, George, Mary, and Stephen, were born in 1906, 1907, and 1915, respectively. The great-grandchildren of decedent who are children of George and entitled to take the corpus of that part of the trust set aside for him are Anne, Mary, and Sarah, born in 1933, 1935, and 1939. respectively. The great-grandchildren of decedent who are children of Mary and entitled to take the corpus of that part of the trust set aside for her are Sheila, Kathleen. and Michael, born in 1931. 1932, and 1935. respectively. Stephen. son of A. Conger Goodyear, was unmarried and without issue at the time of decedent's death.

The value of the corpus was $394,319.28 on the date of decedent's death and $395,042.60 on the optional valuation date. The value (based upon the Actuaries or Combined Experience Table of Mortality with interest at 4 percent per annum) of the possibility that the trust corpus would revert to decedent if she survived A. Conger Goodyear, his children. and his grandchildren living at the date of decedent's death, was $0.000000163.

The Commissioner contends that the value of the trust property, after deducting the value of A. Conger Goodyear's outstanding life estate, should be included in decedent's gross estate because she would have reacquired the property upon a resulting trust if she had survived A. Conger Goodyear, his three children. the great-grandchildren, of whom there were three living when the trust was created and six when decedent passed away, and their issue. Respondent

also asserts that even if decedent did not survive all these individuals the corpus might have passed to her heirs or next of kin upon resulting trust, in the event that all the great-grandchildren, who were the ultimate remaindermen, should die without issue before the death of their parents; or, in other words, that the three children of A. Conger Goodyear might die without issue surviving.

The second trust was similar in its provisions to the first. Its net income was to be paid to another of decedent's sons, Charles W. Goodyear, during his lifetime. Upon his death the fund was to be divided into four equal shares and the income from one share was to be paid to each of the four named children of Charles W. Goodyear during their respective lifetimes. The children were Charles, Jr., Jane. Laurence, and Austin. Upon the death of any of these four grandchildren of decedent the share held for him or her was to be paid to his or her lawful issue per stirpes, if any, otherwise to the survivors of the four grandchildren or their issue per stirpes. If any of the four grandchildren should predecease their father. Charles W. Goodyear, then upon the latter's death the share that would have been held for the deceased grandchild was to be delivered to the lawful issue of such grandchild, if any; otherwise to the survivors of the four grandchildren or their issue per stirpes.

Charles W. Goodyear, son of decedent, was born in 1883 and survived the decedent. His four children, Charles, Jr., Jane, Laurence, and Austin, were born in 1909, 1910, 1912, and 1919, respectively. The great-grandchildren of decedent who are children of Charles, Jr., and entitled to take the corpus of that part of the trust set aside for him are Charles, III, David, and Andrew, born in 1933, 1935, and 1939, respectively. The great-grandchildren of decedent who are children of Jane and entitled to take the corpus of that part of the trust set aside for her are Hardin, Carlton, and Grace, born in 1933, 1934, and 1936, respectively. The great-grandchildren of decedent who are children of Laurence and entitled to take the corpus of that part of the trust set aside for him are Laurence. Jr., and Daniel, born in 1936 and 1938, respectively. Austin Goodyear, son of Charles W. Goodyear, was unmarried and without issue at the time of decedent's death.

The value of the corpus of this trust was $348,097.74 on the date of decedent's death and $337,750.25 on the optional valuation date. The value, computed as in the case of the first trust, of the possibility that the trust corpus would revert to decedent if she survived Charles W. Goodyear, his children and grandchildren was $0.0000000000876.

Respondent would include this trust, minus the value of Charles W. Goodyear's life interest, in decedent's gross estate upon the same grounds and for the same reasons as those which apply to the first trust.

The third trust was created for the benefit of decedent's daughter, Esther G. Watson. and others. The income was to be paid to Esther for life and after her death to her husband Arnold for his life. Upon the death of the survivor of Esther and Arnold the corpus was to be delivered in equal shares to the lawful issue of Esther then surviving per stirpes, if any, otherwise to the distributees of Esther as in the case of intestacy as then determined by the intestate laws of the State of New York.

Esther G. Watson. daughter of decedent, was born in 1881 and survived the decedent. Her husband, Arnold, was born in 1877 and also survived the decedent. Esther's three children, living at the time of decedent's death. are Ellen, Esther Crane, and Anne, born in 1910, 1915. and 1916. respectively. Esther's grandchildren, living at the death of decedent, are Esther Spaulding, S. V. R.. III. Nancy, and Mary Anne, born in 1935. 1937, 1940, and 1939, respectively.

The value of the third trust corpus was $364,522.09 on the date of decedent's death and $361.959.80 on the optional valuation date. The actuarial value, computed upon the same basis as above, of the possibility that decedent might survive the living beneficiaries of this trust was $0.0000446 on the date of death.

The fourth trust was similar in terms to the third. The income was to be paid to decedent's son, Bradley Goodyear. during his lifetime. Thereafter the income was to be paid to his wife, Jeanette, during her lifetime. Upon the death of the survivor of Bradley and Jeanette the corpus was to be delivered to the lawful issue of Bradley in equal shares per stirpes, if any, otherwise to the distributees of Bradley as in the case of intestacy as then determined by the intestate laws of the State of New York.

Bradley Goodyear, son of decedent, was born in 1885 and survived decedent. His wife, Jeanette, was born in 1886 and also survived decedent. Bradley's children, living at the date of decedent's death, were Bradley. Jr.. John, Fanny, and Thomas. born in 1911, 1912. 1914, and 1917. respectively. Bradley's grandchildren, also living at decedent's death, were John, Jr., and Alexander, born in 1938 and 1940, respectively.

The value of the corpus of the fourth trust was $355.656.77 on the date of decedent's death and $348,192.96 on the optional valuation date. The actuarial value of the possibility that decedent might survive the living beneficiaries of this trust was $0.0001814 on the date of death.

Respondent contends that the value of the property included in the third and fourth trusts, excluding the outstanding life interests, should be included in gross estate because decedent retained a possibility of inheriting the trust property "amounting to a reversion or possibility of reverter." This argument rests upon the ground that under New York law a mother is included in the class of distributees of her chil-

dren, in the event they die without descendants, and consequently her prior decease operates to remove her from the class and cut off her possibility of inheriting.

.In our judgment the Commissioner erred in holding that these four transfers in trust were intended to take effect in possession or enjoyment at or after the grantor's death. The case, we think, is a good one for revealing the verbal ingenuity and unreal technicalities that must be indulged in if the doctrine of *Helvering* v. *Hallock*, 309 U. S. 106, is to be stretched beyond its logical and intended scope. It will be recalled that the trusts there considered expressly provided that corpus would revert to the grantor or he would have power to revoke upon the sole contingency that he survive his spouse, who in the ordinary course of events would be his contemporary and therefore quite apt to predecease him. The Court held in effect that he intended to give nothing as to the remainder unless it turned out that he would die first, which, of course, lent great importance to his death in so far as disposition of the property was concerned.

Directing our attention to the first two trusts involved in the present case. the gist of respondent's argument is that here. as in the *Hallock* case, decedent, prior to her death. gave nothing absolutely in so far as the remainders were concerned because she failed to provide in the trust instrument who would take in the event all the great-grandchildren should die without issue before the death of their parents, the decedent's grandchildren. In that situation upon the death of the last grandchild no one would be living to take the remainders and there would be a resulting trust by implication of law in favor of decedent, if living. or her heirs or next of kin. The Commissioner argues that the possibility of the property returning to the grantor by operation of law is as effective a tie or string upon the gift as an express provision that under certain circumstances the property would be returned, citing *Commissioner* v. *Allen*, 108 Fed. (2d) 961, and *Estate of Felicie G. Keiffer*, 44 B. T. A. 1265; and that the remoteness of the contingency that the decedent would take is immaterial, citing *Estate of Horatio Gates Lloyd*, 47 B. T. A. 349. and *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, —— Fed. Supp. —— (Dist. Ct. Pa., Jan. 8, 1943).

In the *Hallock* case, as the Commissioner suggests, the grantor could as well have provided simply that income should be paid to his wife for life, remainder to his children if the grantor predeceased the wife, saying nothing about what would happen if the grantor survived the wife. In the latter event presumably the trustee would hold upon a resulting trust and the property would be returned to the grantor; and we shall assume, *arguendo*, that the same result would have. been reached by the Court although this event would have taken place by operation of law rather than by an express reservation in the instru-

ment. We do not think it follows from this, however, that the same result would obtain where the possibility created by operation of law is so slender as not to be distinguished from the impossible for all practical purposes. Notwithstanding language that may be found in some of the cases, it seems obvious that if absurdity is to be avoided the degree of likelihood or remoteness of the contingency must play a part in ascertaining whether "the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living * * *." *Klein* v. *United States*, 283 U. S. 231. This is our understanding of the rationale of *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54, where the court overlooked the imperfections in the grant that were relied upon by the Commissioner and gave voice to the thoughts that the grantor disposed of the property "as well as any man could" and "No inter vivos trust can ever be made that would not be includible in the grantor's estate for the purpose of taxation if the petitioner's [Commissioner's] view prevails." This Court upon several occasions has noted its approval to the placing of reasonable limits upon the sweep of *Helvering* v. *Hallock, supra. Estate of Charles Delany*, 1 T. C. 781; *Estate of Edward E. Bradley*, 1 T. C. 518; *Estate of Edward Lathrop Ballard*, 47 B. T. A. 784; *Estate of Flora W. Lasker*, 47 B. T. A. 172; *Estate of Lester Hofheimer*, 2 T. C. 773; and *Estate of Mabel H. Houghton*, 2 T. C. 871. With respect to one of the trusts in the *Delany* case we said that "the possibility of reverter plainly approaches absurdity, and for that reason should be disregarded," and in the recent *Hofheimer* case:

* * * Since the decedent had three children at the time the earlier trust was created, and an additional grandchild at the time of the second transfer on trust, the probability of his contingent reversion ever vesting in him in possession was very remote, indeed. It is to the degree of this probability that we are taught to look by the doctrine of *Hallock's* case, and not to the technical nature of the estate which the decedent retained.

When the trusts in the present case were created decedent was approximately 81 years of age. Her sons who were the primary life tenants of the first two trusts were then 57 and 51 years, respectively. The grandchildren involved in the first trust were then 19, 27, and 28 years old; the great-grandchildren (ultimate remaindermen) then living were 1, 2 and 3 years old; and in the six years between creation of the trust and the grantor's death three other great-grandchildren were born. In the second trust the grandchildren involved were 15, 22, 24, and 25 years of age; the great-grandchildren were then three in number, none more than one year old; and in the following six years five other great-grandchildren were born. The chance that decedent would regain possession of the corpus of either of these trusts through the failure of beneficiaries was indeed small, so small

in fact that actuarially it was worth in each instance only a small fraction of a cent on more than $300,000. If taxation is a practical matter, we can not shut our eyes to the practical certainty that decedent would not survive the others. It was certain enough, we think, to be given effect in the ordinary affairs of life, and if so it should be enough for tax purposes. And surely we can not say that decedent *intended* to make the gift incomplete until her death by studiously reserving through silent implication of law a minute chance of recapture.

The Commissioner states on brief, having reference to the first two trusts, that, if decedent had added the word "heirs" somewhere along the line in connection with the gifts over instead of what he terms the technical and limited word "issue", the gifts would have been complete beyond question. We see little merit in respondent's position, and believe that this statement demonstrates the weakness of the Commissioner's argument when applied to the facts of this case. Presumably a person can die without heirs just as he can die without issue, and accordingly the possibility of a failure of the trust is ever present. It is a matter of degree. And at any rate if the remainders in the first two trusts had been left to the survivor of decedent's grandchildren and his or her heirs, the practical result would have been little different. If all the grandchildren had predeceased decedent leaving no surviving spouse or issue or parent, decedent would have taken the entire corpus as heir or distributee under New York law. Decedent Estate Law § 47–c, § 83 and see the table on page 293. Thus, substantially [1] the same result would follow upon her unlikely survival whether decedent happened to use the word "heirs" or "issue" and yet the use of one or the other, if respondent is correct, would bring about opposite conclusions for tax purposes. "Surely the *Klein* decision was not intended to encourage the belief that a change merely in the phrasing of a grant would serve to create a judicially cognizable difference in the scope of § 302 (c), although the grantor retained in himself the possibility of regaining the transferred property upon precisely the same contingency." *Helvering* v. *Hallock, supra.*

For the foregoing reasons and upon authority of the cases above cited, respondent's determination in respect of the first two trusts is reversed.

The Commissioner's attempt to include the third and fourth trusts in gross estate, apparently upon the sole ground that decedent might have taken as a distributee of the life tenants if she had survived them

[1] The only difference would be that, if decedent had used the word "heirs," in order to take all the trust property as an heir of the grandchildren she would have to be the sole surviving grandparent and also survive her daughters-in-law or sons-in-law, as the case may be, and the grandchildren's spouses. But this would have the effect only of making the possibility of her taking that much more remote, which in the Commissioner's view is immaterial anyway.

892

and they in turn had survived their children and grandchildren, only serves to emphasize the point we have endeavored to make above. As we have said, the Commissioner complains that decedent failed to use some such word as "heirs" in the first two trusts above, arguing that if she had done so there would have been a complete divestiture; but he gives as the ground for including the third and fourth trusts in gross estate the very fact that the decedent has used the word "distributees." The words "heirs" and "distributees" have been accorded the same meaning by statute in New York. Decedent Estate Law. § 47–c. A distributee or heir in New York can be a husband or wife, child or descendant, father or mother, brother or sister or his descendant, grandparent, great-grandparent, uncle, aunt, great-great-grandparent, great-uncle, great-aunt, and cousin. If respondent's view is correct, no individual can make a gift to anyone standing in one of these relationships to him that would not be intended to take effect in possession or enjoyment at or after the donor's death. And this would appear to be so whether the gift were in trust or absolute, for who could gainsay the possibility that the donee might die intestate still owning the given property, leaving no distributees having a claim prior to that of the donor.

We think the Supreme Court had no such consequences in mind when it decided the *Hallock* case, and as to the last two trusts respondent's determination is also reversed.

*Decision will be entered under Rule 50.*