ESTATE OF WILLIAM WALKER, DECEASED, KATHARINE W. WALKER AND JAMES E. MACCLOSKEY, JR., EXECUTORS AND TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 159. Promulgated November 30, 1944.

*William Wallace Booth, Esq.*, for the petitioners.
*Orris Bennett, Esq.*, for the respondent.

392

394

OPINION.

OPPER, *Judge*: The questions presented relate to the propriety or permissible extent of certain inclusions in decedent's estate. One involves the subject matter of a transfer by decedent to a trust for the benefit of two grandchildren. The controversy is whether this falls within the provisions of section 811 (c), Internal Revenue Code, as intended to take effect at or after decedent's death, under the principle of *Helvering* v. *Hallock*, 309 U. S. 106, and subsequent cases.

This subject has been variously treated in a number of recent cases and several tests have been applied, or, at least, if there is but one test, it has been divergently expressed. The question has been said to be whether decedent disposed of his property during his lifetime "as well as any man could," *Commissioner* v. *Kellogg* (C. C. A., 3d Cir.), 119 Fed. (2d) 54; whether he retained a "string or tie" upon the disposition of the property in spite of its transfer to the trust,

*Lloyd* v. *Commissioner* (C. C. A., 3d Cir.), 141 Fed. (2d) 758; the degree of remoteness of the probability of reversion, *Estate of Benjamin L. Allen*, 3 T. C. 844; *Estate of Ellen Portia Conger Goodyear*, 2 T. C. 885; and the intention of the decedent as manifested by the terms of his gift. See *Frances Biddle Trust*, 3 T. C. 832, concurring opinion.

By any one of those tests it seems to us the property composing the trust before us must be included in the gross estate. Decedent did not dispose of his property as well as any man could. He eliminated his son, the father of the income beneficiaries, a clearly available taker, as well as his other children and their possible issue, from the line of succession. This omission makes it much more reasonable to think of the trust as a gift limited to the grandchildren and their own household group, with a reversion to the grantor upon failure to realize those limited objectives, than as an effort to dispose of the property completely and to provide for reversion only as a last resort.

By the same token, if his two grandchildren, who were then minors and unmarried, both died without wives or children and without exercising their limited power of appointment, the decedent, by further action if he were alive, and otherwise by his will, himself undertook to prescribe the subsequent devolution of the property and thereby retained a string or tie to bring it back to him and subject it to his further control upon the happening of the designated contingencies.

As we have said, the grandchildren had neither wives nor children and their limited power to appoint by will could not have been exercised at the time the trust was created, since minors are incapable of testamentary action. 20 Purdon's Pa. Stat., sec. 181. Even at the time of decedent's death both were unmarried, one was still a minor and the other had barely reached majority. Thus, only those two lives stood between decedent and a reversion—a far cry from the "remoteness" found to exist in such cases as *Frances Biddle Trust, supra;* cf. *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48.

Finally, if we attempt to judge this situation by analyzing the decedent's evident intention, we have not only a reference in the instrument to the explicit and clearly contemplated possibility that decedent might survive his grandchildren and thereby succeed to the property, but to the further obviously anticipated contingency that the grandchildren might not themselves survive to receive it, even though they outlived the grantor. In that event, a further indication of decedent's purpose that the transfer should not definitively ensue as a consequence of the establishment of the trust is manifested by the provision that even in this event, a possibility extending far into the future, the dead hand of the grantor should still maintain its hold over the ultimate disposition of the property by means of the require-

ment that in such circumstances it was to pass in accordance with the provisions of his will.

While we might regard it as only remotely possible that a grantor should outlive his grandchildren, cf. *Estate of Ellen Portia Conger Goodyear*, *supra*, and *Estate of Lester Hofheimer*, 2 T. C. 773, there is no such improbability in the failure of the grandchildren themselves to survive the designated period of retention of the corpus. Considering all the circumstances, including this provision and the evident limitation of the takers to a particular segment of the decedent's family, we think the terms of the trust indenture demonstrate an intention that the transfer should take effect, if not at death, then thereafter. *Martha E. Gaston Estate*, 2 T. C. 672.

Perhaps the case most nearly resembling the present facts is *Fidelity-Philadelphia Trust Co. v. Rothensies* (Stinson estate), 142 Fed. (2d) 838 (C. C. A., 3d Cir.). There decedent left two unmarried daughters for whose benefit she had created a trust during her lifetime. Income was to be paid to the daughters for their lives, and the principal was given to their issue, if any, otherwise to revert. The court held the trust property includible in decedent's estate. Considering that the grandchildren here are entitled only to the income unless they reach certain ages and then are to succeed to the principal in the sole discretion of the trustees, of whom decedent was one, it is difficult to say here any more than in the *Fidelity-Philadelphia* case that the ultimate takers were in being at the time the trust was created. While certiorari has been granted in that case, 323 U. S. 693, it is limited to the quantum of inclusion, an issue which, as will presently appear, has been eliminated from this proceeding. For all of the foregoing reasons, we take the view that the present transfer in trust must be treated, to the extent that respondent has done so, as one intended to take effect in possession or enjoyment at or after death.

Petitioner's only quarrel with the process of valuation is that respondent, having determined the correct figure for the remainder interest after the two life estates in the grandchildren, should in addition have allowed for the possibility that their limited power of appointment over the remainder might have been exercised by the respective life tenants. Passing the question whether this would be an allowable diminution of decedent's reversion, it seems unquestionable that in any event the contingencies involved are in their nature incapable of actuarial computation and hence that they have no place in the calculation of value. *Robinette v. Helvering*, 318 U. S. 184. We think respondent's action in this respect was proper and that the corresponding portion of the deficiency should be sustained.

The remaining questions relate to the inclusion at full face amount and accrued interest of two promissory notes executed by two of decedent's children and held by him at the time of his death. Peti-

tioner concedes inclusion, but only at a value, about half of the face amount, represented by collateral held by the estate.

Both notes were due at such a time that, without more, the statute of limitations would have operated as a bar to collection by the executor on the optional valuation date. In the case of the daughter's note there is the additional factor that her status as a married woman rendered accommodation liability voidable under Pennsylvania law. 48 Purdon's Pa. Stat., sec 32. And as to both children, the facts suggest that their personal assets were insufficient to establish their ability to discharge the debt.

On the latter point, respondent relies on *Estate of Edwin Hodge*, 2 T. C. 643, reasoning that the debtors became solvent when decedent's death put them in funds through their participation in the estate. But the obstacles to enforcement would not thereby have been eliminated. The question to be settled is the fair market value of the estate's assets. This involves a setting of the price at which a willing buyer and a willing seller would deal. With their apparent infirmities we regard it as too great a stretch of the credulity to conclude that a prospective buyer would be prepared to acquire these notes at any price appreciably in excess of the value of the collateral. At best he would be buying a lawsuit, and the only fair inference from the present record is that it would be an unsuccessful one.

We think petitioner has furnished sufficient proof to make a *prima facie* case for the absence of any value in the notes in excess of the collateral. If there were other factors, the burden of going forward to prove them was thereby shifted to respondent. On this issue, we regard respondent's action as erroneous.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

ARUNDELL, *J.*, dissenting: It seems to me that the majority opinion on the first issue disregards the fact that the estate tax falls upon the shifting of an economic interest from the dead to the living. *Shukert* v. *Allen*, 273 U. S. 545; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 238.

Section 811 (c) deals with property technically transferred by means of *inter vivos* gift, the actual enjoyment or possession of which is made to depend upon the death of the grantor. The grantor's death, completing the gift previously made, is the event which calls the statute into play. The crux of the problem is pointed out by the Supreme Court in *Helvering* v. *Hallock*, 309 U. S. 106, where, in commenting upon *Klein* v. *United States*, 283 U. S. 231, the Court said: "By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor." The

question presented in the *Hallock* case and its companion cases is made manifest in the following statement: "All involve dispositions of property by way of trust in which the settlement provides for return or reversion of the corpus to the donor *upon a contingency terminable at his death.*"

In the present case the transfer sought to be subjected to tax bore no reference to the death of the decedent. His death could have no effect whatsoever upon the possession or enjoyment of the trust property, neither creating, completing, enlarging, or diminishing the estate or interest of any taker under the trust instrument. His death was the "generating source" of no property rights or interests. No interest, right, or benefit passed from him to others upon his death, or was terminable at his death. All had been established by the *inter vivos* transfer and remained completely unaffected upon his death. It is difficult, therefore, to understand the basis for including in decedent's gross estate the value of property the transfer of which was completed during his lifetime, not in contemplation of death and in no way related to his death.

It is true that on a remote contingency, namely, that both grandsons die prior to distribution to them of the corpus, without leaving widows. or children, and without exercising the testamentary power of appointment, the property might revert to the donor, if living, and otherwise to his estate. However, as stated in *Lloyd* v. *Commissioner*, 141 Fed. (2d) 758: "If the contingent reversionary interest should ever vest in the settlor in his lifetime (or after his death for that matter) it would vest only because of the death of the life beneficiaries under the prescribed conditions and not because of or with relation to the death of the settlor." This case is indistinguishable in principle from *Lloyd* v. *Commissioner*, *supra*; *Estate of Benjamin L. Allen*, 3 T. C. 844; and *Frances Biddle Trust*, 3 T. C. 832. Upon such authority and upon analysis of the plain terms of the trust instrument, I am of the opinion that decedent gave nothing contingently upon his death; that nothing passed from him to others at his death; and that, therefore, the transfers were not intended to take effect in possession or enjoyment at or after his death.