FRANCES BIDDLE TRUST, SYDNEY G. BIDDLE AND FIDELITY-PHILADELPHIA TRUST COMPANY, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112209. Promulgated May 15, 1944.

*Kenneth W. Gemmill, Esq.*, for the petitioners.
*William D. Harris, Esq.*, for the respondent.

OPINION.

MELLOTT, *Judge*: The petitioners, Sydney G. Biddle and Fidelity-Philadelphia Trust Co., contest respondent's determination that the trust[1] of which they are trustees (Frances Biddle trust) is liable, as a transferee of property of the estate of Frances Biddle, for estate tax in the amount of $1,789.37.

---

[1] The notice was addressed to Fidelity-Philadelphia Trust Co. Trustee, Transferee, but in the petition it is alleged: "Since there is no power in one Trustee to act alone this petition is filed by both of the Trustees."

The issues are:

(1) Whether the value of the corpus of the trust estate, after deducting the value of the interest of the life tenant, is includible in the gross estate of the decedent as a transfer intended to take effect in possession or enjoyment at or after her death within the meaning of section 302 (c) of the Revenue Act of 1926, as amended.

(2) Whether the transferee liability is barred by the statute of limitations.

(3) Whether petitioners are liable as trustee-transferees of property properly includible in the gross estate of the decedent.

(4) Whether the imposition of a trustee-transferee liability on petitioners under the provisions of the Revenue Act of 1926, as amended, is in violation of the Fifth Amendment to the Constitution of the United States, inasmuch as the trust was created in 1922.

The facts are found to be as stipulated; but we set out herein only those necessary for an understanding of the questions to be decided.

On April 21, 1922, Frances Biddle, sometimes herein called the decedent, created an irrevocable trust. The petitioners are the trustees. The deed of trust provides, *inter alia*, that the income of the trust shall be paid to the settlor's son, Sydney G. Biddle, for life, and, upon the death of the life tenant, to Francis B. Biddle, executor of the estate, to be applied to the maintenance of the children of Sydney G. Biddle during their minority. When the children born before the execution of the trust reach the age of 21 and until they become 25 the income is to be paid to them in equal shares. When each child born before the execution of the trust reaches the age of 25 and when each child born after the execution of the trust reaches the age of 21, such child's share of the principal of the trust estate is to be paid to him, or to his issue, *per stirpes*, if he dies before reaching such age, or to his brothers and sisters if he dies without issue surviving.

The deed of trust then provides:

If all the children of Sydney G. Biddle die, after the death of Sydney G. Biddle, without leaving issue, or if there are no children or the issue of deceased children of Sydney G. Biddle living at the time of his decease, then this Trust shall forthwith cease and terminate and the property made the subject of this Trust shall revert to and become a part of the Estate of Frances Biddle, and Philadelphia Trust Company shall have full and complete power and authority to transfer, assign and set over all and any of the securities and property at that time held in this Trust to the legal representatives of the said Estate of Frances Biddle.

At the time of the creation of the trust, which, it is stipulated, was not made in contemplation of death, Sydney G. Biddle was 32 years of age and had 3 children, aged 3½ years, 2 years, and 5 months, respectively. Another son was born 16 months after the death of Frances Biddle.

Frances Biddle died March 28, 1937. She was survived by Sydney G. Biddle, then 47 years of age, and by the three sons of Sydney, who were respectively 18½, 17, and 15 years of age. They and the fourth son of Sydney were all living at the time of the hearing.

On June 28, 1938, estate tax return was filed with the collector of internal revenue for the first district of Pennsylvania, showing a net taxable estate under the Revenue Act of 1926 of $133,848.90 and under the Revenue Act of 1932 of $193,848.90. Tax in the amount of $23,-541.93 was shown to be due and was paid on the same date. Additional tax in the amount of $3,008.38 was paid to the collector on November 13, 1939, following receipt of a letter from the internal revenue agent in charge at Philadelphia holding that the income collected by the executor during the year following decedent's death—the executor having elected to have the property valued in accordance with the method authorized in subdivision (j) of section 302 of the Revenue Act of 1926, as added by section 202 of the Revenue Act of 1935—was to be included in gross estate. The net taxable estate of decedent, without giving any consideration to the trust, is $140,597.22 under the Revenue Act of 1926 and $200,597.22 under the Revenue Act of 1932.

The notice of deficiency (determination of transferee liability) was mailed June 9, 1942, and petition was filed herein August 19, 1942.

The fair market value of the entire trust property owned and held by the trustees of the trust on the date of the decedent's death was $46,766.25, and not $53,103.26 as stated in the notice of deficiency. The fair market value of the entire trust property owned and held by the trustees on March 28, 1938, was $43,042.50 and not $47,011.54 as stated in the notice of deficiency.

The life estate of Sydney G. Biddle in the trust on the date of decedent's death had a value of $25,252.84 and on March 28, 1938, a value of $23,282.53, both of which values are based upon the principal value of the trust estate as of the respective dates. The remainder interest in the trust after the life estate of Sydney G. Biddle (as distinguished from the decedent's possibility of reverter) had a value on the date of decedent's death of $21,513.41, and on March 28, 1938, a value of $19,759.97.

The value of the right to receive $1 if Sydney G. Biddle's three elder sons should predecease him was $0.00280 on the date of the death of decedent, and $0.00273 on March 28, 1938. The probability that Sydney would survive these three sons was .01001 on the date of death of the decedent, and .00959 on March 28, 1938. These values and probabilities have been computed on the basis of standard actuarial formulae and the use of the combined experience table of mortality and the interest rate of 4 percent per annum as prescribed in the Commissioner's regulations. They give no effect to the possibility of Sydney

G. Biddle having additional children or to the possibility of his children having issue, since no actuary tables exist for the valuation of those possibilities.

Issues 2, 3, and 4 are not mentioned in petitioners' brief nor are they included in the "Points upon which Petitioners Rely." However, since they have not been specifically abandoned, we have considered them and sustain the respondent thereon. *Evelyn N. Moore*, 1 T. C. 14 (on appeal 2 C. C. A.); *Higley* v. *Commissioner*, 69 Fed. (2d) 160; *Fidelity Trust Co.* v. *Commissioner*, (3 C. C. A.) 141 Fed. (2d) 54; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

The question to be decided under the principal issue is whether the value, at the time of the death of the decedent, of the remainder interest in the trust property after the life estate of her son, is includible in her gross estate as a transfer intended to take effect in possession or enjoyment at or after her death within the purview of section 302 (c) of the Revenue Act of 1926, as amended,[2] and as construed by article 17 of Regulations 80, 1937 Edition, as amended by T. D. 5008, C. B. 1940–2, p. 286.[3]

In determining the tax liability now in issue respondent included in the gross estate of the decedent the value, at the time of her death, of

---

[2] [Revenue Act of 1926, as amended, 44 Stat. 9, Ch. 27.]
GROSS ESTATE—TRANSFERS BY DECEDENT IN HIS LIFETIME.

Sec. 302 [as amended by section 404 of the Revenue Act of 1934]. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\*      \*      \*      \*      \*      \*      \*

(c) [As amended by Joint Resolution of March 3, 1931, Public, No. 131, Seventy-first Congress, and by section 803 (a) of the Revenue Act of 1932.] To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

[3] ART. 17. *Transfers conditioned upon survivorship.*—The statutory phrase, "a transfer \* \* \* intended to take effect in possession or enjoyment at or after his death," includes a transfer by the decedent prior to his death (other than a bona fide sale for an adequate and full consideration in money or money's worth) whereby and to the extent that the beneficial title to the property transferred (if the transfer was in trust), or the legal title thereto (if the transfer was otherwise than in trust), is not to pass from the decedent to the donee unless the decedent dies before the donee or another person, or its passing is otherwise conditioned upon decedent's death; or, if title passed to the donee, it is to be defeated and the property is to revert to the decedent as his own should he survive the donee or another person, or the reverting of the property to the decedent is conditioned upon some other contingency terminable by his death. Since in such transfers the decedent's death is requisite to a termination of his interest in the property, it is unimportant whether his interest be denominated a reversion or a possibility of reverter, whether it arose by implication of law or by the express terms of the instrument of

the property transferred, less the value of the life estate of Sydney G. Biddle. He insists this action is correct under *Helvering* v. *Hallock*, 309 U. S. 106, and cases which have followed that decision.[4] He argues that, since there is an express provision in the trust deed for a reversion of the trust property to the settlor's estate in the event all the children of Sydney die, after his death, or in the event there are no children or issue of deceased children of Sydney living at the time of his decease, "the gift is not complete when made but is intended to take effect in possession or enjoyment at or after the grantor's death."

Petitioners argue that, under the facts, the possibility of any reversion to decedent's estate is so remote as to be practically *nil;* that under the rationale of *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54, nothing is to be included in gross estate since the grantor had not provided "any string or tie in the instrument whereby ·[s]he could pull the res back * * * or invade the corpus" but had disposed of her "interests in the corpus of the trust as well as any * * * [person] could"; that decedent's death did not, in any way, affect the interests of the beneficiaries of the trust and nothing passed from her to them by reason of her death; that her death gave no dominion over the trust corpus that the beneficiaries did not have before; that the provision inserted in the trust instrument was but a recitation of what would have occurred by operation of law in the event of the death of the beneficiaries without surviving issue before the time when distribution was to be made to them; and that no absolute rule of law exists or is implied in *Helvering* v. *Hallock, supra*, to the effect that the value of the property transferred, less the remainder, must be included in gross estate if a reversion is provided for in the instrument of transfer but not if the same result eventuates by operation of law.

In the recent case of *Lloyd* v. *Commissioner* (3 C. C. A.), 141 Fed. (2d) 758, the court reversed our holding in *Estate of Horatio Gates Lloyd*, 47 B. T. A. 349. Briefly, the facts in the case were:

---

transfer, and whether the interest of the donee be contingent or vested subject to be divested, and the tax will apply, * * * without regard to the time when the transfer was made, whether before or after the enactment of the Revenue Act of 1916. Thus, upon a transfer by a decedent of property in which an estate for life is given to one and an estate in remainder to another, but with a provision added that the estate in remainder shall revest in the decedent should he survive the owner of the life estate, there is to be included, in determining the value of the decedent's gross estate following his death, the value as of the date of his death of the estate in remainder, if the life estate is then outstanding. The value of the outstanding life estate is not to be included in determining the value of the gross estate, unless that estate had been transferred in contemplation of the decedent's death, or otherwise as to render it a part of the gross estate. * * *

[4] *Estate of John E. Cain, Sr.,* 43 B. T. A. 1133; *Commissioner* v. *Washer*, 127 Fed. (2d) 446; certiorari denied, 317 U. S. 653; *Estate of Horatio Gates Lloyd*, 47 B. T. A. 349 (reversed, 3 C. C. A., Mar. 31, 1944, 141 Fed. (2d) 758; *Fidelity-Philadelphia Trust Co. et al., Executors of Stinson* v. *Rothensies*, —— Fed. Supp. ——, (on appeal, 3 C. C. A.); *Estate of Lester Field,* 2 T. C. 21, (on appeal, 2 C. C. A.); *Estate of Martha E. Gaston,* 2 T. C. 672.

The decedent had executed two trusts in 1919 for the benefit of his sons, reserving the right to modify or amend, but not to revoke in whole or in part. In 1926, the decedent amended each trust so that the income would be payable to the respective beneficiaries for life regardless of age, with general power of appointment by will both as to trust principal and income. Each amendment provided that if the power was not exercised, the trust principal was to be paid to the son's wife and his descendents and, if none such survived him then the corpus or principal was to be paid to the settlor or his legal representatives. We recognized that the conditions made more remote the possibility that the property would come back to the donor; but we expressed the conclusion that the degree of remoteness was not determinative, citing *Estate of John E. Cain, Sr.*, 43 B. T. A. 1133. *Commissioner* v. *Kellogg, supra*, was thought to be distinguishable in that the grantor in that case had not reserved "any strings by which it could come back to him during his lifetime." although under certain circumstances it "was to go to the grantor's next of kin."

The Circuit Court of Appeals for the Third Circuit carefully reviewed, in the *Lloyd* case, not only its decision in the *Kellogg* case but also the cases by the Supreme Court antecedent to the *Hallock* case and many of our decisions subsequent thereto. We should make a no less careful review before announcing adherence to the views expressed in our opinion in the *Lloyd* case.

In *Knowlton* v. *Moore*, 178 U. S. 41 (1900), the Supreme Court, speaking through Mr. Justice White, after reviewing the history and form of "death duties," said:

Although different modes of assessing such duties prevail, and although they have different accidental names \* \* \* nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. \* \* \* confusion of thought may arise unless it is always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties.

Section 202 (b) of the Revenue Act of 1916 provided for inclusion in the gross estate of any interest in property of which the decedent had at any time made a transfer, or created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after death. Substantially the same provision has been continued in the law and is the portion of 302 (c) of the Revenue Act of 1926, as amended, with which we are concerned here. *Shukert* v. *Allen*, 273 U. S. 545, decided in 1927, arose under the Revenue Act of 1918. The decedent therein, when he was 57 years of age, created a trust for the

benefit of his children. The income was to accumulate for 30 years before distribution. The only question was whether the trust was intended to take effect at or after the decedent's death. In deciding that it was not, the Supreme Court said: "The transfer was immediate and out and out, leaving no interest remaining in the testator. The trust in its terms has no reference to his death, but is the same and unaffected whether he lives or dies." Nothing passed at the decedent's death and the postponement of possession and enjoyment to the beneficiaries was not considered so akin to a testamentary disposition as to bring it within the statute.

*Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, decided in 1929, arose under the Revenue Act of 1921. In that case transfers in trust, under which the donor parted with both possession and beneficial interest in the property during his lifetime, were held not to be subject to estate tax as transfers intended to take effect in possession or enjoyment at or after death. The gifts were of a life estate with remainder over on the death of the life beneficiary or five years after the death of the donor, whichever should happen earlier. The rationale of the opinion is that the shifting of the economic interest in the trust property, which was the subject of the tax, was complete as soon as the trust was created, and the statute indicates no purpose to tax completed gifts made by the donor in his lifetime, not in contemplation of death, where he has retained no control, possession, or enjoyment of the property transferred.

*May* v. *Heiner*, 281 U. S. 238, involved the transfer of property in trust to pay the income to decedent's husband for life, then to herself for life, with remainder over to her children, their distributees or appointees. The Court held that the transfer was not made in contemplation of or intended to take effect in possession or enjoyment at or after death and that it was not testamentary in character. It was complete when made and no interest in the property held under the trust deed passed from the dead to the living. The opinion quotes with approval from *Reinecke* v. *Northern Trust Co.*, *supra*. "In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred."

*Chase National Bank* v. *United States*, 278 U. S. 327, also decided in 1929, involved policies of insurance in which the decedent had reserved the right to change the beneficiaries. The Court held that the retention by the decedent of control over the benefits, with power to direct their future enjoyments until his death, "brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax." In other words, death operated as an effective transfer by cutting the strings with which the decedent might pull back the proceeds of the policies and bestow

them on another. Thus the value of the polices at the time of death was properly includible in his gross estate.

In *Tyler* v. *United States*, 281 U. S. 497, decided in 1930, the Supreme Court considered the question whether property owned by a husband and wife as tenants by the entirety should be included in the gross estate of the decedent husband. It held that the death of one of the tenants became the "generating source" of important and definite accessions to the property rights of the other and that the transfer was subject to the tax. There, as in *Klein* v. *United States*, 283 U. S. 231, decided the next year, practical considerations applicable to taxation were held to be the touchstone rather than "the artificial rules which delimit the title, rights, and powers of tenants by the entirety at common law"; but the *sine qua non* of the power to impose the tax was that the death of one tenant had "the effect of passing to the survivor substantial rights in respect of the property, theretofore never enjoyed by such survivor."

In 1931 the Supreme Court decided *Klein* v. *United States, supra.* There the decedent had, by deed, conveyed to his wife certain property for life, with the provision that if she survived him she should take the property in fee; but if the grantor survived her the "reversion" in fee was "reserved to the grantor and excepted from this conveyance." The grantor died first. At his death the fee reserved by him during his lifetime passed to the grantee and enlarged her estate. It is perfectly plain, as stated by the Court, that the death of the grantor was "the indispensable and intended event" which enlarged the estate of the grantee, "thus satisfying the terms of the taxing act and justifying the tax imposed." The decision laid down no new principle of law, but simply reaffirmed and applied those which had been enunciated and applied in every case since *Knowlton* v. *Moore, supra.*

In 1935 the Supreme Court decided *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39 and *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48. The donors had transferred property in trust, with income payable to a designated beneficiary. Each instrument of transfer provided that if the beneficiary predeceased the settlor the trust was to determine and the property be delivered to the donor, to be his absolutely; but if the donor died first the property was to become that of the beneficiary. The Chief Justice and three of the Associate Justices were of the opinion—as expressed in the dissent written by Associate Justice, now Chief Justice, Stone—that it was "of no consequence what particular conveyancers' device, what particular string, the decedent selected to hold in suspense the ultimate disposition of his property until the moment of his death," pointing out that under the *Klein* case and others, "the decedent's death, operating upon his gift *inter vivos* not complete until his death, is the event which calls

the statute into operation." The majority held, however, that the grantor had "parted with the title and all beneficial interest in the property, retaining no right with respect to it which would pass to any one as a result of his death" (*Helvering* v. *St. Louis Union Trust Co.*), characterizing his interest as a "mere possibility of reverter" (*Becker* v. *St. Louis Union Trust Co.*) which his death destroyed. The cases were followed by the Supreme Court only once—in *Bingham* v. *United States*, 296 U. S. 211, decided a month later.

The next time that the question came before the Supreme Court was in 1940 when it took, by certiorari, the *Hallock, Houston* (Cassell Trust), and *Bryant* cases "because of the difficulties which lower courts" had found in "applying the distinctions made" by the *St. Louis Union Trust Co.* cases to the rule of the *Klein* case. All involved "dispositions of property by way of trust in which the settlement provides for return or reversion of the corpus to the donor upon a contingency terminable at his death." The Court rejected "as untenable the diversities taken in the St. Louis [Union] Trust cases in applying the *Klein* doctrine" because they "drastically eat into the principle" of the *Klein* case.

Much has been written by the courts, by authors of textbooks and periodicals, and by others, upon the possible effect of the *Hallock* case. We need not pause to consider whether it overruled *May* v. *Heiner*, *supra*;[5] *Hassett* v. *Welch*, 303 U. S. 303,[6] or *Reinecke* v. *Northern Trust Co.*, *supra*.[7] We are content to accept the views of the Courts of Appeal which have spoken upon the subject. One of the most recent is *Lloyd* v. *Commissioner*, *supra*, in which the Circuit Court of Appeals for the Third Circuit said:

> We think it is clear that the *Hallock* case was neither intended to nor did work any change in the test applied in the *Klein* case for determining whether there had been an *inter vivos* transfer of an interest intended to take effect in possession or enjoyment at or after the transferor's death. * * * What the *Hallock* case plainly did was to reestablish the principle of the *Klein* case in full vigor and not to alter or enlarge it.

Adopting the postulate indicated by the quotation, the Court applied the test whether the grantor has retained "a string or tie whereby he can reclaim the transferred property or whether he has otherwise reserved an interest whose passing to others is determinable by his

---

[5] In *Estate of Mary H. Hughes,* 44 B. T. A. 1196, it was held that the *Hallock* case overruled *May* v. *Heiner.* The *Hughes* case was overruled in *Estate of Edward E. Bradley,* 1 T. C. 518, and the Circuit Court of Appeals for the Second Circuit affirmed in *Helvering* v. *Proctor,* 140 Fed. (2d) 87.

[6] In *Helvering* v. *Proctor* Justice L. Hand, speaking for the majority, pointed out that if the Commissioner were right in his contention that *May* v. *Heiner* was overruled by *Hallock,* then *Hassett* v. *Welch* suffered the same fate *sub silentio.*

[7] In *Estate of Flora W. Lasker,* 47 B. T. A. 172, we stated we were "not prepared to impeach the validity of *Reinecke* v. *Northern Trust Co."* and the Circuit Court of Appeals for the Seventh Circuit affirmed 141 Fed. (2) 889, saying it joined "the numerous other Courts of Appeals in denying the Commissioner's contention."

death." This was substantially the view taken by the same Court in the *Kellogg* case, which we have twice said, "imposes a logical limitation on the scope of section 302 (c)." *Estate of Edward Lathrop Ballard*, 47 B. T. A. 784, 791; affirmed "on the opinion below," 138 Fed. (2d) 512 (2 C. C. A.) ; *Estate of Edward E. Bradley*, 1 T. C. 518, 522; affirmed *sub nom Helvering* v. *Proctor*, 140 Fed. (2d) 87 (2 C. C. A.). It is, in essence, the rule of the *Klein* case and the same as that applied by us in *Estate of William A. Taylor*, 2 T. C. 634.

*Estate of Charles Delaney*, 1 T. C. 781 (*on appeal* 3 C. C. A.), and *Estate of Peter D. Middlekauff*, 2 T. C. 203, each contains a suggestion that it is of some importance, in determining the applicability of section 302 (c), whether the reversionary interest was created by an affirmative act of the settlor or by operation of law. While we are of the opinion that the cases were correctly decided, we are conscious of the fact that "a string or tie supplied by a rule of law is as effective as one expressly retained in the trust indenture." [8] The teaching of the *Hallock* case is that "technical forms in which interests contingent upon death are cast" should not control. The test is whether the death was "the *intended* event which brought the larger estate into being for the grantee   *   *   *."

*Lloyd* v. *Commissioner*, *supra*, applied the test just alluded to where there was a "possibility of reverter in the settlor [of two trusts] or his estate upon a failure of the trusts through the deaths of the life beneficiaries [his children] without leaving respective wives or descendants to survive them and without having exercised their general powers of appointment." We applied it in *Estate of Lester Hofheimer*, 2 T. C. 773 (on appeal, 2 C. C. A.), saying at pp. 787, 788:

*   *   * Here in neither trust did decedent name himself as a remainderman in the event of death of any beneficiary. On the contrary, if any child should die, that child's share was to go to its issue, and if it should die without issue, then to the surviving children or their issue. Only ultimately on the failure of all issue before the surviving life tenant's (the Kodgiesens) death would the decedent's next of kin take. Since the decedent had three children at the time the earlier trust was created, and an additional grandchild at the time of the second transfer on trust, the probability of his contingent reversion ever vesting in him in possession was very remote indeed. It is to the degree of this probability that we are taught to look by the doctrine of *Hallock's* case, and not to the technical nature of the estate which the decedent retained. *   *   *. In the instant case not the death of any beneficiary or beneficiaries in being, but the complete failure of decedent's whole line would alone work a reversion in him under the terms of either trust.

---

[8] The quotation is from Paul, Federal Estate and Gift Taxation, vol. 1, p. 368, which seems to be supported by the cases cited, viz., *Commissioner* v. *Allen*, 108 Fed. (2d) 961; certiorari denied, 309 U. S. 680 ; *Hughes* v. *Commissioner*, 104 Fed. (2d) 144; *Estate of Felicie G. Keiffer*, 44 B. T. A. 1265 ; petition for review dismissed, 5 C. C. A., Oct. 14, 1942; and *Howard* v. *United States*, 40 Fed. Supp. 697.   See also *Estate of Ellen Portia Conger Goodyear*, 2 T. C. 885, 889.

In *Estate of Ellen Portia Conger Goodyear*, 2 T. C. 885, there was a remote possibility that an elderly woman might outlive the several named beneficiaries of trusts created by her (her children, grand-children, and great-grandchildren) because she had failed to provide in the instruments who would take in the event all her great-grand-children should die without issue before the death of their parents, her grandchildren, thereby making it possible that there would be a resulting trust in her favor or for her heirs or next of kin. We ex-pressed the view "that if absurdity is to be avoided the degree of likelihood or remoteness of the contingency must play a part in ascertaining whether 'the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living'," and declined to approve the Commissioner's determination that any amount was to be included in her gross estate under section 811 (c), I. R. C., which is the same as section 302 (c), *supra*. See also *Estate of Mabel H. Houghton*, 2 T. C. 871 (on appeal, 2 C. C. A.), and *Estate of Henry S. Downe*, 2 T. C. 967 (on appeal, 2 C. C. A.).

Looking at the degree of likelihood or remoteness of the contin-gencies in the instant proceeding, as we did in the *Goodyear* case and as we think should be done in determining the intention of the decedent when she made the transfer giving rise to the present controversy, we think that the Commissioner's determination that any amount is to be included in her gross estate under section 302 (c), *supra*, can not stand. The studied effort which the decedent obviously made to deal with the foreseeable contingencies in such a way that the property would be permanently severed from her estate is not, under the facts, overcome by the fact that she chose to deal with a highly improbable situation—the failure of her whole line. We therefore decline to approve the deficiency. Whether any amount should be included under section 302 (a) is not before us.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

SMITH, *J.*, concurs only in the result.

---

OPPER, *J.*, concurring: Much of the language used in the various cases appears at first glance to be confusing and difficult to reconcile with the *Hallock* case and *Klein* v. *United States*, which it reestab-lished. But if we concentrate upon the principle and eliminate dis-tinguishable elements, it becomes apparent that the rule itself is less difficult than its application to individual situations.

Thus, it must be emphasized that we are not dealing here with transfers at death which might fall more clearly into some other

provision of section 302, and that expressions establishing the test as whether decedent's death brought about the shifting of economic benefits from the dead to the living or was the generating source of the survivor's title are illuminating only as they throw light on this distinction. Cf., e. g., *Tyler* v. *United States*, 281 U. S. 497. Section 302 (c) deals by definition with transfers made by the decedent during his lifetime, although subjected to estate tax because thought to be analogous to transfers at death. Gifts intended to take effect at death, like those made in contemplation of death, may appear to be complete at the time they are made. Cf. the *St. Louis Union Trust Co.* cases. But if they partake of the infirmity which the statute defines, that is, if they were primarily intended to take effect in possession or enjoyment only at the decedent's death or subsequent to it, the statute includes them in the gross estate.

The test of intention—that is, of course, the decedent's intention—involves basically a question of fact to be decided on the evidence. But we are not deprived of the benefit of certain basic principles for the ascertainment of the general character of that intention. The instrument of transfer must be taken to show what was in the decedent's mind perhaps better than any extrinsic evidence. It is a legal document and the decedent must be presumed to have intended its legal effects. These effects are to be construed in their broader aspect and not on the basis of legal refinements or technical subtleties. Cf. *Helvering* v. *Hallock*. Some things may follow so clearly from the decedent's disposition that his representatives may not be heard to contradict them.

On the other hand, the framework of extrinsic circumstances can not but furnish guidance in appropriate cases. Thus, the creation of a trust for the benefit of an aged aunt by a comparatively youthful grantor may demonstrate a totally different intent from a gift to minor grandchildren and their issue and appointees, notwithstanding that the instruments of transfer are otherwise identical. Likewise in one set of circumstances it may be of consequence that the grantor has indicated his concern, on the subject of a reacquisition of possession, by express provisions establishing his reversionary interest, while in others the remaining facts may negative that significance.

It is in this setting that we are required to ascertain for the purposes of each controversy as it arises whether all of the relevant evidence indicates the critical intention. In this instance, as in the *Kellogg* and *Lloyd* cases, I agree that it does not. The efforts of the decedent "to deal with the foreseeable contingencies in such a way that the property would be permanently severed from her estate" is not overcome, on this record at least, by the fact that the well nigh inconceivable failure of all potential takers was given the express

effect of an ultimate reversion. The principles stated seem to me to call for the result in the present proceeding, as in the *Kellogg* and *Lloyd* cases, that these transfers were intended to take effect at once in all of their immediate and remote aspects and, consequently, that there was no intention, so far as it could be humanly avoided, that any phase of the arrangement should be postponed until the transferor's death.

MURDOCK, STERNHAGEN, LEECH, DISNEY, and KERN, *JJ.*, agree with the above.