ESTATE OF HARRIS FAHNESTOCK, DECEASED, GEORGETTE G. V. FAHNESTOCK, HARRIS FAHNESTOCK, JR., AND JAMES F. MIMNAUGH, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1615.    Promulgated April 3, 1945.

*Albert Stickney, Esq.*, *Arthur W. Siegrist, Esq.*, and *Joseph Lorenz, Esq.*, for the petitioners.

*James C. Maddox, Esq.*, for the respondent.

OPINION.

Black, *Judge*: The Commissioner in his determination of the deficiency in estate tax against the estate of Harris Fahnestock, deceased, made several adjustments to the estate tax return filed by the executors. The only one of these adjustments now in issue is the one whereby the Commissioner added to the net estate as reported in the return $323,282.99 as "transfers." This latter amount represented the values of the remainders after the life interests of the primary beneficiaries had been deducted in the five trusts created by decedent by instruments of June 23, 1926, November 24, 1926, and July 8, 1927. The Commissioner stated in his deficiency notice that the reason that he included the values of these remainder interests in decedent's estate was because they were transfers "intended to take effect in possession or enjoyment at or after the decedent's death" in accordance with the provisions of section 811 (c) of the Internal Revenue Code, printed in the margin.[1] The Commissioner still insists on the correctness of this view.

The substance of petitioners' contention is that the five trusts created by decedent during his lifetime were not intended by the grantor to take effect "in possession or enjoyment" at or after his death, which has since occurred at the age of 70, but, on the contrary, were intended to take effect in "possession or enjoyment" immediately upon the execution of the trust agreements. To that end the trusts were so limited as

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \*. \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the posssession or enjoyment of, or the right to the income from, the property. \* \* \*

to make it impossible that they should revert to the grantor except on the occurrence of the single remote possibility that no issue of the grantor should survive him. We think petitioners must be sustained on the authority of such cases as *Frances Biddle Trust*, 3 T. C. 832, now on review, C. C. A., 3d Cir., and *Lloyd* v. *Commissioner*, 141 Fed. (2d) 758.

The issue which we have here to decide involves the construction of the language of five separate trust indentures. However, the language of each of them is substantially the same in so far as it involves the issue we have here to decide. Therefore, in our discussion we shall have in mind the language of the trust agreement created for Harris Fahnestock, Jr., on June 23, 1926, as the life beneficiary with remainders over as named in the trust indenture. It is the argument of the Commissioner that the language used in these trust agreements brings them within the classification of "transfers to take effect in possession or enjoyment at or after decedent's death." In support of his argument the Commissioner relies upon such cases as *Klein* v. *United States*, 283 U. S. 231; *Helvering* v. *Hallock*, 309 U. S. 106; *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 142 Fed. (2d) 838; affd., 324 U. S. 108; and *Estate of William Walker*, 4 T. C. 390.

The *Hallock* case is a classic example of a transfer conditioned on survivorship. In that case the facts as to the transfer in question were briefly these: The decedent in 1919 created a trust under a separation agreement, giving the income to his wife for life, with the further provision:

If and when Anne Lamson Hallock shall die, then and in such event and thereupon the within trust shall terminate and said Trustee shall * * * pay Party of the First Part [Hallock, the grantor] if he then be living any accrued income, then remaining in said trust fund and shall * * * deliver forthwith to Party of the First Part the principal of the said trust fund. If and in the event said Party of the First Part shall not be living then and *in such event* payment and delivery over shall be made to Levitt Hallock and Helen Hallock, respectively, son and daughter of the Party of the First Part, share and share alike * * * [Italics supplied.]

When the settlor died in 1932 the life beneficiary survived him. It seems clear that upon Hallock's death in 1932 not only was his possibility of reverter put to an end, but also for the first time it became certain that his two children would become the remaindermen of the corpus of the trust after the falling in of the life estate. It took his death to make certain that fact. In the *Hallock* case the Supreme Court reiterated the rule of the *Klein* case. The Court quoted from the *Klein* case as follows:

* * * It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed.

The Court, after quoting the foregoing language from the *Klein* case, went on to say:

The inescapable rationale of this decision, rendered by a unanimous Court, was that the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes inter vivos transfers that are too much akin to *testamentary dispositions* not to be subjected to the same excise. By bringing into the gross estate at his death that which the settlor gave *contingently upon it*, this Court fastened on the vital factor. It refused to subordinate the plain purposes of a modern fiscal measure to the wholly unrelated origins of the recondite learning of ancient property law. Surely the *Klein* decision was not intended to encourage the belief that a change merely in the phrasing of a grant would serve to create a judicially cognizable difference in the scope of § 302 (c), although the grantor retained in himself the possibility of regaining the transferred property upon precisely the same contingency. The teaching of the *Klein* case is exactly the opposite. [Italics supplied.]

As we view it, the language of the trust indentures involved in this proceeding does not bring them within the ambit of the *Klein* and *Hallock* cases.

For further discussion of the meaning of the *Hallock* and *Klein* cases, see *Lloyd* v. *Commissioner, supra,* and *Fifth Avenue Bank of New York* v. *Commissioner,* 59 Fed. Supp. 753. There is nothing in the language of the trust agreements to indicate that decedent intended to make gifts testamentary in character and intended to "take effect in possession or enjoyment at or after his death." The gifts *inter vivos* made in these trust agreements to the life tenants and remaindermen were in no way conditioned upon their surviving the grantor of the trusts.

The remainder interests which were conveyed, for example, in the trust indenture for Harris Fahnestock, Jr., were as follows: Upon the death of Harris Fahnestock, Jr., (the life tenant) the principal thereof was to be paid to the issue of the marriage between Harris Fahnestock, Jr., and Alice Muriel Post, or, in default of issue of such marriage then living, to Ruth Fahnestock and Faith Fahnestock, the issue of either of them who might not be then living to take the share which their ancestor would have taken had she survived, or, if neither Ruth Fahnestock nor Faith Fahnestock, nor any issue of them, were then living, to decedent or his legal representatives.

Undoubtedly, when decedent died October 11, 1939, there came to an end a very remote possibility that the estate might revert to him. But, so far as we can see, the interests of the remaindermen were not enlarged or augmented to the slightest degree by reason of his death. The *inter vivos* gifts which were made to them were not in any way made contingent upon the death of the decedent, as was the case in the *Klein* and *Hallock* cases, and decedent's death added nothing to their ownership.

So far as we can see, the provisions of the trust agreements in the

instant case fall within the same category as the provisions of the trust agreement in the *Frances Biddle Trust* case, *supra*. Our decision for the taxpayer in that case was based upon our holding that, while decedent's death ended a very remote possibility of reverter, it did not enlarge or augment the estates of the remaindermen. We said: "The test is whether the death was the intended event which brought the larger estate into being for the grantee * * *." We must follow the *Frances Biddle Trust* case unless it has been in effect overruled by the Supreme Court's recent decision in the case of *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U. S. 108.

The Commissioner in his brief strongly relies on the *Fidelity-Philadelphia Trust Co.* case as decided by the Third Circuit, which has now been affirmed by the Supreme Court. Briefs in the instant case had been filed prior to the Supreme Court's decision. We think the facts of the instant case are clearly distinguishable from those present in the *Fidelity-Philadelphia Trust Co.* case. The latter case was a survivorship case. At least it was so construed by both the Third Circuit and the Supreme Court, and that fact, as we view it, constituted the basis of both decisions. The Supreme Court, after briefly stating the facts in that case, among other things, said:

* * * The ultimate disposition of all the trust property was suspended during the life of the decedent. Only at or after her death was it certain whether the property would be distributed under the power of appointment or as provided in the trust instrument. The life estates of the daughters were contingent upon their surviving their mother and took effect in enjoyment only at the death of the latter. The remainder interests of the descendants of the daughters were contingent upon their surviving both the *decedent* and the daughters and took effect in possession *only after the death of the decedent.* Thus until the moment of her death or until an undetermined time thereafter the decedent held *a string or contingent power of appointment* over the total corpus of the trust. *The retention of such a string,* which might have resulted in altering completely the plan contemplated by the trust instrument for the transmission of decedent's property, subjected the value of the entire corpus to estate tax liability. [Italics supplied.]

In the instant case the decedent reserved no power of appointment, contingent or otherwise. He held no such string over the corpus at the time of his death. The feature which distinguishes the instant case from the *Fidelity-Philadelphia Trust Co.* case is that in the case at bar the estates created by the trust indentures vested and became distributable independently of the death of the grantor. If the grantor had died on the next day after the creation of the trusts, this event would not have changed or affected in any way the devolution of the trust estates. He retained no string which, to use the language of the Supreme Court in the *Fidelity-Philadelphia Trust Co.* case, "might have resulted in altering completely the plan contemplated by the trust instrument for the transmission of decedent's property."

While there may be some language used by the Supreme Court in the *Fidelity-Philadelphia Trust Co.* case which, if read free from its context, might lend some support to the argument which the Commissioner makes in the instant case, we think the opinion of the Court must be read in the light of its context. As said by the Second Circuit in the recent case of *Commissioner* v. *Irving Trust Co.*, 147 Fed. (2d) 946, in discussing the Supreme Court's decision in the *Fidelity-Philadelphia Trust Co.* case:

* * * But in that case the suspense was occasioned by the *reservation of a power of appointment in the grantor.* The language quoted must be read in that light. Here the grantor retained no power and reserved no enforcible right. To treat the remainders as a part of his estate because of such language would be to include remainders to persons other than the grantor, which might take effect in the event of his death, even though he retained no control over them and no enforcible right of enjoyment or possession. * * * [Italics supplied.]

As we have already stated, the death of the decedent in 1939 ended his very remote possibility of a reverter, but we are unable to see where it had any greater effect than that. Therefore, we do not think there is any warrant for including under section 811 (c) of the code, as a part of decedent's estate, the value of the corpora of the five trusts in question at the date of decedent's death.

At the hearing of the instant case, which was prior to the Supreme Court's recent decision in the *Fidelity-Philadelphia Trust Co.* case, testimony of a qualified actuary was introduced giving his actuarial computations of the value of decedent's reversionary interests in the several trust estates immediately prior to his death. We have embodied the substance of these actuarial computations in our findings of fact. However, such valuations, in our view, are now rendered immaterial under the Supreme Court's decision in the *Fidelity-Philadelphia Trust Co.* case. If any value is to be included in decedent's estate under section 811 (c), it would be the value determined by the Commissioner and not the actuarial computation of the value of decedent's reversionary interests immediately prior to his death. However, for reasons already stated, we have held no value is includible under section 811 (c). The Commissioner makes no contention that any value is includible under section 811 (a). Cf. *Lloyd* v. *Commissioner, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

------

TURNER, dissenting: The grants in trust here involved were to certain beneficiaries for life, with remainders to their issue, but in the event they left no issue surviving, the remainders were to go to certain contingent remaindermen, or if they were dead, to their issue;

but if they in turn had left no issue surviving, the trust estates were to revert to the grantor. The exact language in two of the trusts is that in such event "the entire principal of the trust shall revert to the Grantor or to his legal representatives." while in the other three trusts the provision is, "then to the Grantor; or if the Grantor be deceased to the personal representatives of the Grantor, to be by them distributed to the next of kin of the Grantor * * *." It thus appears that the decedent, by specific provision in each of the trust instruments, reserved, and at all times held and retained, a possibility of reverter in the principal of each trust, which, according to the pronouncements of the Supreme Court in *Helvering* v. *Hallock*, 309 U. S. 106, requires the inclusion of such trust principal in the decedent's gross estate.

The Supreme Court, in *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U. S. 108, after discussing the scope of *Helvering* v. *Hallock, supra,* and *Klein* v. *United States,* 283 U. S. 231, said: "The taxable gross estate * * * must include those property interests the ultimate possession or enjoyment of which is held in suspense until the moment of the grantor's death or thereafter." In that case the interest in the trust property retained by the grantor was not nearly so broad as here. There the grantor reserved only the right to appoint by will the taker of the corpus in the event of the failure of certain contingent remaindermen to survive the life tenants, and if the grantor failed to exercise the power of appointment, the trust estate was to pass to certain charities named in the trust instrument. Holding that the "string or contingent power of appointment" was sufficient, under the statute, to require the inclusion of the trust corpus in the grantor's gross estate, the Court said: "The ultimate disposition of all the trust property was suspended during the life of the decedent. Only at or after her death was it certain whether the property would be distributed under the power of appointment or as provided in the trust instrument." Here, as in that case, the preference of the grantor obviously was that the trust property should go to his children and their issue, but, for reasons of his own, he was not willing to make, and did not make a full and complete grant of all his rights and interest in the property to or for their benefit. Instead, he made the vesting of the estate of each and every remainderman contingent upon his (the remainderman's) surviving the holder of the life estate, retaining for himself a contingent reversion in the principal of each trust, which reversionary interest passed at his death to his personal representatives, and the ultimate disposition of the property—whether it is to go to the remaindermen named in the trust instrument or is to go to the beneficiaries of the decedent's estate, as provided by his will or the laws of descent and distribution—is suspended until the happening or failure of the contingencies which the decedent by the trust

instrument has imposed. If in the *Fidelity-Philadelphia Trust Co.* case the retained power of appointment was a "string" sufficient to bring the trust corpus into the grantor's gross estate, then by comparison the reversionary interest retained by the grantor in the instant case approaches the proportions of a rope, or if not a rope, a cord, certainly much stronger than the string in the *Fidelity-Philadelphia Trust Co.* case.

It is accordingly my opinion that the Court here is in error in excluding from the decedent's gross estate the principal of each of the above trusts, and for that reason I note my dissent.

SMITH, LEECH, and OPPER, *JJ.*, agree with this dissent.