ESTATE OF MARY B. HUNNEWELL, MALCOLM DONALD, NELSON S. BARTLETT, AND FRANKLIN H. PALMER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4151. Promulgated April 16, 1945.

*Harold L. Clark, Esq.*, for the petitioners.
*Charles P. Reilly, Esq.*, for the respondent.

OPINION.

ARNOLD, *Judge*: Respondent contends that the value of the transferred property which at decedent's death was still subject to the possibility of reverting to decedent's estate is includible in gross estate under section 811 (c) of the Internal Revenue Code,[1] on the theory

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible wherever situated, except real property situated outside of the United States—

    \*        \*        \*        \*        \*        \*        \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

that the transfer was intended to take effect in possession or enjoyment at or after death. Petitioners claim that there was no such intent accompanying the transfer; that decedent's death could have had no effect whatsoever on the interests of the beneficiaries; and that no part of the transferred property is includible in decedent's estate.

The terms of the deposit contract are detailed in our findings. In brief, decedent deposited money with an insurance company for the benefit of those of her grandchildren then living or thereafter born who should attain age 21. As each grandchild became 21 his share of the income of the deposit was to be paid over to him annually. In case of the death of a grandchild after reaching age 21, his share of the principal sum was to vest absolutely in his estate. In case of the death of any grandchild before reaching age 21, his share of the principal sum was to remain on deposit for the benefit of the surviving grandchildren, increasing their fractional shares of the total income and principal of the fund. In case all the grandchildren should die before the last survivor reached age 21, the remaining ·part of the fund would revert to the decedent or her estate. Decedent had five grandchildren when the deposit was made and six grandchildren at the date of her death, two of whom were then over 21 years of age.

Respondent relies primarily upon *Fidelity-Philadelphia Trust Co.* (*Estate of Stinson*) v. *Rothensies*, 142 Fed. (2d) 838, (hereinafter referred to as the *Stinson* case) which was decided on the authority of *Helvering* v. *Hallock*, 309 U. S. 106. The *Stinson* case has since been affirmed by the Supreme Court, 304 U. S. 108. The terms of the deposit agreement and the accompanying circumstances in the instant case are sufficiently similar to those in *Frances Biddle Trust*, 3 T. C. 832, (appeal pending, C. C. A., 3d Cir.) to require a similar result. See also *Estate of Benj. L. Allen*, 3 T. C. 844, (appeal pending, C. C. A., 2d Cir.) and *Estate of Harris Fahnestock*, 4 T. C. 1096. We are of the opinion that the *Stinson* case is not determinative here for the reasons stated in the *Fahnestock* case.

To hold that decedent in the instant case intended that the transfer should take effect in possession or enjoyment at or after death would be to do violence to the meaning of the word "intended," for the decedent quite clearly had no such thing in mind. Two-sixths of the property was freed of the possibility of reverter before decedent's death. All of it might have been had she lived another 15 years. Her death could have had no possible effect upon the possession or enjoyment of the property transferred. Certainly, she had this in mind when the transfer was made. What she apparently did intend was that an irrevocable transfer should take effect immediately, upon deposit of the funds with the insurance company, as a gift to a class consisting of those of her grandchildren who would attain the age

of 21. Only the untimely death of all of the grandchildren under almost impossible circumstances could accomplish a divestment and reversion of the gift.

It can not be said, paraphrasing the *Hallock* case, that decedent's act was too much akin to a testamentary disposition "not to be subject to the same excises." What decedent here accomplished *inter vivos* could not have been done by will, for as we have pointed out a part of the property vested irrevocably before her death, and all of it might have vested.

*Decision will be entered under Rule 50.*