Estate of Franklin Morse Singer, Deceased, Hall Park McCullough, Frederick G. I. Singer and Emilie L. H. Singer, Executors v. Commissioner.
Estate of Franklin Morse Singer v. Commissioner
Docket No. 3867.
United States Tax Court
1945 Tax Ct. Memo LEXIS 68; 4 T.C.M. (CCH) 960; T.C.M. (RIA) 45322; October 3, 1945
Montgomery B. Angell, Esq., Otis T. Bradley, Esq., George Craven, Esq., 15 Broad St., New York, N.Y., and John G. Saxe, Esq., 102 Maiden Lane, New York, N.Y., for the petitioners. Thomas H. Lewis, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $508,985.71 in estate tax. The petitioners claim an overpayment. The issues submitted for decision are: (1) Whether the corpus of three irrevocable trusts *69 created by the decedent in 1891 and 1902 are includable in his gross estate as transfers to take effect in possession or enjoyment at or after death within the meaning of section 811 (c), I.R.C.; (2) what was the value on August 10, 1940, one year after the death of the decedent, of 19,993 shares of common stock of Singer Manufacturing Company then owned by the estate of the decedent, and of 725 shares of that same stock then owned by Trust No. 4, and of 4,260 shares then owned by Trust No. 5, it being conceded that the corpora of these latter two trusts were properly included in the gross estate as irrevocable transfers within the meaning of section 811 (d); and (3) whether the values of Trusts 1, 2, 3, 4 and 5, before being included in the gross estate, should be reduced by the expenses of judicial accountings by the trustees which were occasioned by the death of the decedent and the necessity of apportioning the Federal and New York estate taxes among the trusts and the estate. Findings of Fact Franklin Morse Singer, the decedent, died testate on August 10, 1939 while residing in the State of New York. He was a citizen of the United States. His executors *70 filed a Federal estate tax return with the collector of internal revenue for the fourteenth district of New York. They elected in that return to have the assets of the estate still held one year after death valued as of that date. The decedent was married three times. He had three children by his first wife, Blanche, all of whom survived the decedent. The decedent and Blanche were divorced in 1901. Blanche survived him. He married his second wife, Suzanne, in 1902. His two daughters of that marriage survived him, but Suzanne died December 15, 1926. He was also survived by a grandchild, the son of his first child, and by two granddaughters, children of one of his daughters by his second marriage. The time and circumstances of his third marriage are not material hereto. The decedent, by an irrevocable deed of trust dated February 12, 1891, created a trust referred to herein as Trust No. 1, in which he named himself as one of three trustees. The trust was created as a part of a prenuptial agreement with Blanche shortly before they were married. The decedent continued as a trustee of the trust until the time of his death. The trust deed provides that the income is to be paid to Blanche *71 during her life, and after her death to the decedent or for the decedent, any wife of his, or certain named of his brothers and sisters or their issue, in such manner as the trustees shall determine during the life of the decedent. The principal of the trust was to be paid, after the death of the survivor of the decedent and Blanche, to all or one or more of the children or issue of the decedent at such time and in such shares as the decedent and Blanche should by joint deeds appoint, and in default of such appointment, to all of the children of the decedent at certain ages. The decedent and Blanche executed a deed on June 10, 1926, in which they irrevocably appointed to receive the trust principal in equal shares after the death of the survivor of the decedent and Blanche, their three children, with the further provision that if any child failed to survive the two parents, then his issue should take that share. The decedent, by an irrevocable deed of trust dated February 13, 1891, created a trust, referred to herein as Trust No. 2, in which he named himself as one of three trustees. This trust was also created as a part of a prenuptial agreement with Blanche shortly before they *72 were married. The decedent continued as a trustee of this trust until the time of his death. The trust deed provides that the income of the trust during the life of the decedent shall be paid to or for the decedent, any wife of his, any of his issue, or any of his named brothers and sisters or their issue, in such shares as the trustees in their discretion shall determine, with power in the decedent to appoint the income during his life to any wife of his. The principal of the trust fund, after the death of the decedent, is to be paid to his children or their issue at such times and in such shares as he shall by deed or will appoint, and in default of appointment, to all of his children who should reach 21. The decedent, by a deed dated February 28, 1902, shortly before his marriage to Suzanne, appointed Suzanne to receive two-thirds of the income of this trust during his life. The decedent executed a deed on June 10, 1926, irrevocably appointing to receive the principal of this trust after his death, the children of his first and second marriages living at his death, the issue of any deceased child to take that child's share. Those persons were to take this property in such shares *73 as might be required for equalizing the share or shares which each child would receive under Trusts 1, 2, and 3. The decedent, by an irrevocable deed of trust dated February 28, 1902, created a trust referred to herein as Trust No. 3 in which he named himself as one of two trustees. This trust was created as a part of a prenuptial agreement with Suzanne shortly before they were married. The decedent continued as a trustee of the trust until the time of his death. The trust deed provides that the income of the trust during the joint lives of the decedent and Suzanne shall be paid to the decedent, and after his death to Suzanne for her life. The principal of the trust, after the death of the survivor of the decedent and Suzanne, was to be paid to the children of the intended marriage at such times and in such shares as the decedent by deed or will might appoint, and in default of appointment, to all of the children of that marriage who should reach 21. The decedent executed a deed on June 10, 1926, in which he irrevocably appointed to receive the principal of the trust in equal shares after the death of the survivor of the decedent and Suzanne, his two daughters of that marriage living *74 at the death of the decedent, the issue of a deceased child to take the child's share. It was stated in each of the three trusts, above mentioned, that the trust should be construed and should take effect according to the law of England. The Commissioner, in determining the deficiency, included the corpus of each of Trusts Nos. 1, 2, and 3 in the gross estate "pursuant to sections 811 (c) and 811 (d) of the Internal Revenue Code." The fair market value and the value within the meaning of that term as used in section 811, I.R.C. of the 19,993 shares of the common stock of Singer Manufacturing Company owned by the estate of the decedent on August 10, 1940, was, on August 10, 1940, $1,799,370. The fair market value and the value within the meaning of that term as used in section 811, I.R.C. of the 725 shares of the common stock of Singer Manufacturing Company, forming a part of the corpus of Trust No. 4 on August 10, 1940, was on August 10, 1940, $65,250. The fair market value and the value within the meaning of that term as used in section 811, I.R.C. of the 4,260 shares of the common *75 stock of Singer Manufacturing Company, forming a part of the corpus of Trust No. 5 on August 10, 1940, was on August 10, 1940, $383,400. The trustees of Trusts 1, 2, 3, 4 and 5 will pay amounts shown in the stipulation, not heretofore allowed by the respondent, for fees, costs, and expenses arising out of proceedings in the courts of New York for judicial accountings of their acts as trustees occasioned by the death of the decedent who was a co-trustee, a life beneficiary, or both, under the trusts, and because of a provision in the decree of the Surrogates Court in a proceeding for the judicial settlement of the account of the executors of the estate of the decedent requiring an apportionment of the Federal and New York estate taxes on the estate of the decedent. The stipulations filed by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner does not claim that the transfers to Trusts Nos. 1, 2 and 3 were made in contemplation of death. He no longer contends that those trusts and the irrevocable appointments made thereunder were revocable transfers within the meaning of section 811(d). The transfers and the irrevocable appointments *76 thereunder were made before the Joint Resolution of March 3, 1931, and the Commissioner does not suggest that those transfers come within section 811 (c) because the income in some cases was payable to the decedent. The principal argument made by the Commissioner in support of his determination is that the corpus of each trust must be included in the gross estate under section 811 (c) because the ultimate takers of the remainders could not be determined until the grantor died. The decedent had five children all of whom had passed their 21st birthdays while the decedent was still alive. They were appointed to receive the corpora of the three trusts provided only that they were alive at the time their father died. As a matter of fact, they all survived him, but until he died there was a possibility that one or more of them might predecease him and in that case the share of the child who died might go to that child's issue or to one or more of the other children or their issue. Thus, there was some uncertainty until the death of the decedent as to just who would take and what the share of each would be. The point which the respondent makes is that because of this uncertainty, section *77 811 (c) requires this property to be included in the gross estate. The only case which he cites in support of this contention is Fidelity-Philadelphia Trust Co., et al., Executors (Stinson Estate) v. Rothensies, 324 U.S. 108. However, the decedent in that case had not surrendered all control over the property. She retained the power to name other takers by her will in case those named in the trust instrument should not survive her. There was an uncertainty in that case until the decedent died as to whether she had disposed of the property at all by the transfer in trust. The decedent in the present case had completely disposed of the property by the transfers and the appointments. There was no uncertainty as to whether he had disposed of it by those instruments or whether he might make some further disposition of the remainder interests to other persons altogether by some other transfer. Cf. Reinecke v. Northern Trust Co., 278 U.S. 339; Estate of Nina M. Campanari, 5 T.C. 488 (July 23, 1945); Frances Biddle Trust, 3 T.C. 832. The Commissioner, in his brief, has made only one other comment in support of his holding that these remainder *78 interests are part of the gross estate. The decedent made not only irrevocable appointments but also provision for the disposition of the property in case the appointments failed for any reason. The only possibility of further control by the decedent was that he could have made further appointments within certain limits., jointly with Blanche as to Trust No. 1, and alone as to Trust No. 2, if the persons appointed in the deeds of June 10, 1926 had all died duing the decedent's lifetime. However, the decedent's death was not the "intended event" which enlarged the estate of the nominees or any of them. He had disposed of his property about as completely as could be expected and it should not be included in his gross estate under section 811(c) because of the extremely remote possibility of the existence of a limited power to which the respondent refers. Estate of Harris Fahnestock, 4 T.C. 1096; Frances Biddle Trust, supra, Lloyd's Est. v. Commissioner, 141 Fed. (2d) 758. There is room for considerable difference of opinion in regard to the value of the Singer Manufacturing Company shares on the valuation date of August 10, 1940, one year after *79 the death of the decedent. The company, with its subsidiaries, was quite large and operated all over the world. A large part of its stock was closely held. Complete detailed current information about the operations of the business was difficult, if not impossible, to obtain. The stock was not listed but had trading privileges in 10-share lots on the New York Curb. There is evidence of sales on the Curb, over the counter, and by direct negotiation. The stock had sold in 1936 for more than $400 per share, but prices declined, probably due to the war. They levelled off somewhat in 1940 after which they increased. August 10, 1940 was just about low tide in the ebb and flow of the price of this stock during this period. There is no evidence that the stock ever sold for less than $90 per share during the period just mentioned. The Commissioner, in determining the deficiency, included the shares in the gross estate at values computed upon the basis of $101.75 per share. He maintains that the values which he thus determined are correct and he finds some support for this contention in the record. The petitioners, on the other hand, find some support in the record for their contention that *80 the value of these shares was not in excess of $80 per share. The record contains a great deal of evidence on the subject. We have taken into consideration all of the evidence in the case, including not only that referred to above, but also everything else which has been brought to our attention and which might have been known to a person dealing for the sale or purchase of the stock on the critical date. We have given the various factors such weight as we thought proper in the light of all of the circumstances and have determined the value of the stock to the best of our ability. The respondent, in his brief, does not offer any opposition to the petitioners' contention under the third issue, and upon authority of the case cited by the petitioners, we hold for them on this point. See Estate of George S. Fiske, 45 B.T.A. 52, aff'd. 132 Fed. (2d) 644. Decision will be entered under Rule 50.